1998-NMCA-119

964 P.2d 158

**STATE of New Mexico ex rel. CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner–Appellant,**

v.

**In the Matter of GEORGE F. and Frank F., Children, Respondents–Appellees.**

No. 18236.

Court of Appeals of New Mexico.

June 23, 1998.

Certiorari Denied Aug. 13, 1998.

Angela Adams, Chief Children's Court Attorney, Diane Garrity, Children's Court Attorney, Gerald F. McBride, Children's Court

Attorney, Roy Stephenson, Children's Court Attorney, Santa Fe, for Appellant.

Ann Halter, Albuquerque, Guardian Ad Litem.

Tara Ford, Peter Cubra, Albuquerque, Amicus Curiae for Advocacy Inc.

Timothy V. Flynn–O'Brien, Bryan & Flynn–O'Brien, Albuquerque, Amicus Curiae for National Association of Social Workers—New Mexico.

## OPINION

BOSSON, Judge.

{1} This case involves the convergence of the Children's Code with the New Mexico Rules of Professional Conduct. The Children's Code requires that a guardian ad litem (GAL) be appointed in civil abuse and neglect cases "to represent and protect the best interests of the child in a court proceeding[.]" NMSA 1978, § 32A–1–4(J) (1995). This same statute requires that the GAL be an attorney. As part of their duties, GALs are required to gather information about the child and report to the children's court. See NMSA 1978, § 32A–1–7(D) (1995). The New Mexico Children, Youth and Families Department (the Department) argues that because GALs are attorneys, they are prohibited by Rule 16–402 NMRA 1998 of the Rules of Professional Conduct from communicating ex parte with department social workers who, it is alleged, are represented by the children's court attorneys who work for the Department. We disagree with the Department's application of the Rules of Professional Conduct to GALs, and we affirm the order of the children's court to that effect. In so doing, we explore the important role GALs must play in protecting the children whose interests they are assigned by the court to represent.

## BACKGROUND

{2} George F. and his younger brother, Frank, were taken into custody by the State of New Mexico on December 16, 1988. Both children had been physically and sexually abused, and they both suffered psychological injuries and behavior problems resulting from the abuse. George's emotional problems are compounded by physical problems. He is deaf and legally blind and communicates only by sign language. Both children were freed for adoption on February 23, 1991, but by December 1996, George had endured over fourteen foster placements and Frank seven. Consequently, both George and Frank are still in the custody of the state.

{3} On May 8, 1996, the children's court ordered the Department to secure an unconditional, long-term placement for George. Upon learning of the Department's intended institutional placement, the GAL became concerned about the lack of staff at the facility who had any experience dealing with George's problems. In particular, the GAL was concerned that there would be no one on the staff at night who could communicate with George and no other residents with similar problems to George's. The GAL attempted to contact both the social worker and the social worker's supervisor requesting status reports on George's contemplated placement, but the calls were not returned. After three days of unsuccessfully attempting to contact the social worker, the GAL was officially informed of the placement plan. The GAL requested and was granted a restraining order to prevent an inappropriate placement. Subsequently, the GAL and the Department came to an agreement about George's placement, and the children's court entered a stipulated order adopting that agreement. However, according to the GAL, George was never given a placement in accordance with that order.

{4} On August 13, 1996, the children's court attorney, who is an attorney with the Department charged by law with bringing abuse and neglect cases, left a voice-mail message for the GAL telling her that she should not contact the Department employees responsible for the case without his consent. This included the social workers assigned to George's case because the children's court attorney considered them to be his clients, and he considered the GAL to be in an adversarial relationship. Over the following two months, the GAL was unable to discover any substantive information regarding the status of the case. She

was informed by a social worker that he had been instructed not to speak with her, and was informed by an attorney for the Department that speaking with the social worker outside the presence of the children's court attorney would violate the ethical rule prohibiting attorneys from communicating with a party they know to be represented by counsel about the subject of the representation. *See* Rule 16–402. Speaking directly with the children's court attorney appears to have been less than satisfactory, because the attorney was unfamiliar with the facts which the GAL needed to represent the child's interests to the court. On September 23, 1996, the GAL provided the children's court with written notice that she had retained separate counsel to represent George and Frank in a federal civil rights lawsuit against the State of New Mexico. The record does not reveal, nor does the Department contend, that the separately retained attorneys involved in that lawsuit have ever violated Rule 16–402. However, on October 1, 1996, the Department's counsel left another voice-mail message for the GAL, referring to the civil rights lawsuit and reiterating that she should not contact the social worker outside the presence of the children's court attorney.

{5} On October 16, 1996, the GAL petitioned the children's court for an order declaring that ex parte contact was not prohibited between the GAL and the Department social workers for the purpose of securing information bearing on the children's well-being. The children's court entered an order declaring that social workers are not clients of the Department and that no statute, rule, or ethical canon prohibited the GAL from contacting social workers in efforts to discover information relevant to representing the child. The children's court denied injunctive relief, stating that this would place the social workers at great risk to have to divulge information that the Department policies prohibit. The Department now appeals the children's court order and raises on appeal the issue of whether an attorney-client relationship exists between the children's court attorney and the social worker. We elect not to decide this issue because we resolve this appeal on other grounds which do not involve the relationship between the children's court attorney and the social worker. Instead, we look at the relationship between the GAL and the child and resolve this appeal based on the difference between the role of a GAL and that of an ordinary attorney representing a client, within the spirit of Rule 16–402 of the Rules of Professional Conduct and the statutory sections of the Children's Code pertaining to the duties of the GAL.

## DISCUSSION

■ {6} Rule 16–402 states:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. Except for persons having a managerial responsibility on behalf of the organization, an attorney is not prohibited from communicating directly with employees of a corporation, partnership or other entity about the subject matter of the representation even though the corporation, partnership or entity itself is represented by counsel.

The prohibition against ex parte communication only applies if three conditions are present: one party must be represented by counsel, another person must be an attorney representing a client, and the communication between the two must be about the subject of the representation. If any one requirement is not satisfied, the prohibition does not apply. The Department argues that all three conditions are present. On the other hand, it is argued that in New Mexico the role of a GAL is unlike that of an ordinary attorney representing a client, and thus, Rule 16–402 does not apply.

### The Purpose of the Children's Code

{7} The New Mexico Children's Code was first enacted in 1972. *See* 1972 N.M.Laws, ch 97; Theodore E. Lauer, *The New Mexico Children's Code: Some Remaining Problems,* 10 N.M.L.Rev. 341, 341 (1980). It was comprehensively revised in 1993. *See* 1993 N.M.Laws, ch. 77, codified at NMSA 1978, §§ 32A–1–1 to 32A–21–7 (1993,

as amended through 1995). Its purpose is "first to provide for the care, protection and wholesome mental and physical development of children[,]" Section 32A–1–3(A), and also "to provide for the cooperation and coordination of the civil and criminal systems for investigation, intervention and disposition of cases, to minimize interagency conflicts and to enhance the coordinated response of all agencies *to achieve the best interests of the child victim* [,]" Section 32A–1–3(E) (emphasis added). In furthering the central purpose of achieving the child's best interests, the statute provides for the appointment of a GAL in abuse and neglect cases who has the duty to "zealously represent the child's best interests[.]" Section 32A–1–7(A). The Children's Code also establishes the "office of children's court attorney," Section 32A–1–6(A), and provides that "[i]n cases involving civil abuse or civil neglect and the periodic review of their dispositions, the attorney ... representing the department is the children's court attorney[,]" Section 32A–1–6(C).

{8} In this case, it is claimed that because the Department and the GAL at times will not agree about issues concerning the best interests of the child, these disagreements force them into the roles of adversaries. Consequently, it is argued that Rule 16–402 applies to both the GAL and the children's court attorney in the context of an abuse and neglect proceeding. We do not agree that the Department and the GAL are adversaries. Because the Department and the GAL are both acting in the child's best interests, they are not structural adversaries in any traditional legal sense, anymore than two social workers who disagree over the best course of action for a child. Such a claim is particularly inconsistent with the Children's Code, given its purpose "to provide for the cooperation and coordination ... for investigation, intervention and disposition of cases[.]" Section 32A–1–3(E).

## The Role of the GAL in Abuse and Neglect Proceedings

{9} New Mexico requires a GAL to be "an attorney appointed by the children's court to represent and protect the best interests of the child in a court proceeding[.]"

Section 32A–1–4(J). The children's court found in this case that "[z]ealous representation requires full access to all information regarding or affecting the child so that the [GAL] can fulfill requirements imposed by statute, rule, and ethics." This statutory authorization is required because Section 32A–4–33 of the Children's Code exempts the child's records from the public's right to inspect public records. See NMSA 1978, § 14–2–1(F) (1993). The legislature has determined that while it is in the child's interest to keep such records confidential, it is also in the child's best interest to allow the GAL full access to this information. Because of the young age of many of the children, the social worker may be in a unique position to learn important information about the child and communicate it to the GAL and from there to the court.

{10} Although New Mexico requires GALs to be attorneys, the qualifications of GALs vary throughout the states. While some states define the GAL "as anyone who represents the child's best interests," other states require the GAL to be "an attorney who provides legal representation." Rebecca H. Heartz, *Guardians Ad Litem in Child Abuse and Neglect Proceedings: Clarifying the Roles to Improve Effectiveness*, 27 Fam. L.Q. 327, 332 (1993). If some states do not require GALs to be attorneys, there is a reasonable basis for inferring that GALs and attorneys need not be treated the same in all respects. *See id.* at 342–44. Indeed, in the *Standards of Practice for Lawyers Representing a Child in Abuse and Neglect Cases,* the American Bar Association draws such a distinction by commenting that "[w]here the local law permits, the lawyer is expected to act in the dual role of [GAL] and lawyer of record." *American Bar Association Standards of Practice for Lawyers Representing a Child in Abuse and Neglect Cases,* A–2 cmt. (Feb.1996) < Ehttp://www.abanet.org/child/childrep.html$ [hereinafter *ABA Standards of Practice* ].

{11} The New Mexico Supreme Court appears to agree that GALs have dual roles and, thus, do not function in the same manner as traditional attorneys. The Court has observed that a GAL can serve two distinct

roles: (1) " *'acting as an extension of the court* by performing the quasi-judicial functions of investigating the facts and reporting to the court what placement was in [the child's] best interests[,]' " and (2) "acting as an advocate for his client's position .... in the same way as does any other attorney for a client—advancing the interests of the client, not discharging (or assisting in the discharge of) the duties of the court." *Collins ex rel. Collins v. Tabet,* 111 N.M. 391, 398–99, 806 P.2d 40, 47–48 (1991) (quoting *Ward v. Department of Soc. Servs.,* 691 F.Supp. 238, 240 (S.D.Cal.1988)).

{12}   In an abuse and neglect case a GAL is required by statute to "report to the court on the child's adjustment to placement, the department's and respondent's compliance with prior court orders and treatment plans and the child's degree of participation during visitations[.]" Section 32A–1–7(D)(8). In fulfilling this statutorily imposed duty, the GAL is required to "communicate with health care, mental health care and other professionals involved with the child's case[.]" Section 32A–1–7(D)(3). As noted in the comments to the *ABA Standards of Practice,* A–2 cmt., when a GAL is "required by statute ... to perform specific tasks, such as submitting a report or testifying as a fact or expert witness[,] [t]hese tasks are not part of functioning as a 'lawyer.' " Similarly, attorney-client privilege has been held not to apply to a GAL's communications with the child when the GAL is not functioning in the customary role of a lawyer. *See, e.g., Ross v. Gadwah,* 131 N.H. 391, 554 A.2d 1284, 1285 (1988). Accordingly, we believe that when a court-appointed GAL performs factual investigations about the child's case to inform the court on the child's circumstances, the GAL is functioning less as an advocate for the child's personal interests, and more as an arm of the court. As one federal court put it, once a GAL is appointed to represent a child, "the guardian ad litem is 'a representative of the court[.]' " *Garrick v. Weaver,* 888 F.2d 687, 693 (10th Cir.1989) (quoting *Noe v. True,* 507 F.2d 9, 12 (6th Cir.1974) (per curiam)).

{13}   We recently observed in *In re Esperanza M.,* 1998–NMCA–039, ¶ 36, 124 N.M. 735, 955 P.2d 204, that the committee commentary to Children's Court Rule 10–108 NMRA 1998, requiring the children's court to appoint a GAL when a petition for abuse and neglect is filed, stresses the uniqueness of the GAL's role under those circumstances:

> The major difference between the role of the guardian ad litem in a neglect or abuse case and the role of the accused's attorney in a delinquency or need of supervision proceeding is that in the former, the guardian ad litem does what he considers to be in the best interests of the child, while in the latter the attorney, although he may advise differently, follows the instructions of his client, even though he may not consider those instructions to be in the client's best interests. The guardian ad litem has much greater freedom.

Thus, a part of the GAL's role in abuse and neglect cases is as a fact finder assisting the court and not as an adversary to the Department. *See Shainwald v. Shainwald,* 302 S.C. 453, 395 S.E.2d 441, 444 (S.C.Ct.App. 1990) (per curiam) (observing that a GAL is not an adversary party in the true sense). The Department regulations appear to acknowledge this distinction. Whereas a "[d]irect contact between social workers and respondent's counsel is limited to exchange of routine information," 8 NMAC 10.7.17.3.1 (Jul. 1, 1997), the "Department routinely informs the Guardian ad Litem about all significant events relating to the child[,]" 8 NMAC 10.7.17.3.2 (Jul. 1, 1997). Commentators have declared that "[d]irect interviews with the child, parents, social workers, relatives, school personnel, and others having knowledge of the facts in the situation are crucial in getting a clear picture of the child's life ." Heartz, *supra,* at 344–45. As we noted in *Esperanza M.,* 1998–NMCA–039, ¶ 40, 124 N.M. 735, 955 P.2d 204, zealous representation of the child's best interest requires more than "passive representation."

{14}   The Department relies on *Collins* for the proposition that GALs are required to perform their duties " 'in accordance with the standards of professional responsibility[.]' " 111 N.M. at 401, 806 P.2d at 50 (quoting *de Montigny v. de Montigny,* 70 Wis.2d 131, 233 N.W.2d 463, 468 (1975)). We acknowledge that part of a GAL's responsibility is to plead

the child's case forcefully. However, the *Collins* opinion clearly separates that duty—as an advocate—from the duty to be " 'an adjunct to the court.' " *Id.* (quoting *de Montigny*, 233 N.W.2d at 468). It has been recognized that GALs " 'must render impartial decisions in cases that excite strong feelings[.]' " *Oosterhous v. Short*, 730 F.Supp. 1037, 1038 (D.Colo.1990) (quoting *State v. Mason*, 724 P.2d 1289, 1291 (Colo.1986)). "It is this intensified requisite of objectivity that separates a[GAL] from an appointed attorney." *Id.*

{15} The practice of appointing GALs to independently represent children in civil child protection proceedings was not widespread until the passage of the Child Abuse Prevention and Treatment Act (CAPTA) in 1974, Pub.L. No. 93–247, 88 Stat. 4 (1974), codified as amended at 42 U.S.C. §§ 5101–5107 (1996). *See* Heartz, *supra*, at 327 n. 1. The requirement of independent investigation has been said to have developed from a concern that "children who have been abused by their parents or caretakers, have also been abused by the system designed to protect them. Too often, they have become invisible to overburdened agencies and courts more concerned with processing and closing cases than with individual children." *Id.* at 347. As a safeguard, therefore, GALs are mandated by statute to investigate as a part of their duties and to provide oversight of all the forces affecting the child's best interests. The GAL's role is not adversarial, but independent, and is designed to "assist the court in carrying out *its* duty of protecting the interests of the child." *Collins*, 111 N.M. at 400, 806 P.2d at 49.

{16} Accordingly, we are persuaded that a GAL, when investigating the facts affecting the child in order to report to the court as required by Section 32A–1–7, is acting to "assist the court in carrying out *its* duty" and is not functioning solely as an attorney advocating the child's wishes, nor in the traditional manner of an attorney who represents a client with a single-minded duty solely to that client. The "dual role" of the GAL is more complex, and the Rules of Professional Conduct that are designed strictly for the traditional role of attorneys do not fit this circumstance. Thus, the GAL is not prohibited by Rule 16–402 from contacting social workers outside the presence of the Department attorneys. We affirm the children's court ruling that no statute, rule, or ethical canon prohibits a GAL from contacting a social worker to discover factual information relevant to the representation of the child.

## The Authority of the GAL to Retain Separate Counsel

{17} Section 32A–1–7(E) of the Children's Code authorizes a GAL to "retain separate counsel to represent the child in a tort action on a contingency fee basis or any other cause of action in proceedings that are outside the jurisdiction of the children's court." The Department states that civil suits for damages "are not uncommon" and suggests that social workers should not be required to reveal information that would subject either themselves or the Department to liability in such circumstances.[1]

{18} The Department raises an important issue. After independent counsel is re-

---

1. We note, however, that most government agencies, unlike corporations, are required by law to reveal public records to any person who requests them to inspect them. *See* § 14–2–1. Records of abuse and neglect proceedings are exceptions to this requirement. *See* § 32A–4–33. Secrecy, however, is the exception not the rule. *See State ex rel. Newsome v. Alarid*, 90 N.M. 790, 797, 568 P.2d 1236, 1243 (1977). The policy that exempts abuse and neglect proceedings from the requirement that government records be open exists to protect the child and the family, not the Department. Similarly, we observe that the role of a government attorney differs from that of corporate counsel. *See Frey v. Department of Health & Human Servs.*, 106 F.R.D. 32, 37 (E.D.N.Y.1985) ("[U]nlike a corporate party, the government also has a duty to advance the public's interest in

achieving justice, an ultimate obligation that outweighs its narrower interest in prevailing in a law suit."). As one commentator has observed, "when a member of the public has been wronged by some action or inaction of a government agent, the government's proper goal coincides with that of the injured citizen in uncovering and correcting the wrong." Note, *DR 7–104 of the Code of Professional Responsibility Applied to the Government "Party"*, 61 Minn.L.Rev. 1007, 1021 (1977). Moreover, the ABA Comment to Model Rule 1.13, defining the identity of an entity client, states that "when the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful act is prevented or rectified, for public business is involved."

tained to sue the Department and perhaps these same social workers on behalf of the child, there clearly is an adversarial relationship between the child (and his retained attorney) and the Department, which would trigger Rule 16–402 for that particular relationship.[2] But that fact does not cause a metamorphosis of the role of the GAL into that of a traditional attorney representing a client. The GAL's statutory duty of independent investigation and reporting to the court continues unabated. That is why the GAL retains someone else to sue on behalf of the child and is forbidden from taking any direct pecuniary interest in that lawsuit. *See* § 32A–1–7(E). The GAL maintains her independence. If the child is injured, the GAL has a duty to report the facts surrounding the injury to the court, as well as a continuing duty to investigate. It would be ironic indeed if retention of separate counsel—necessitated as part of the GAL's zealous representation and concern for the child's best interests—resulted in less protection for the child because the GAL could not communicate directly with Department social workers. If a social worker becomes a named defendant in a separate civil case, nothing prevents the Department from removing that social worker from direct contact with the child and substituting another social worker. Indeed, such a course of action would seem prudent given the inevitable conflict in the social worker's position between representing the interests of the child and protecting himself from that child. Applying the Department's logic, because the social worker is arguably a client of the children's court attorney, that attorney could then have no contact with either the child or the GAL because they would have retained separate counsel to pursue the child's claim. This would paralyze both the Department and the child. Simply because the Department and its social workers are defendants in a civil suit should not make the child again a victim by having his GAL obstructed from doing her statutory duty.

## CONCLUSION

{19} We hold that when a GAL, as mandated by statute, communicates with others involved in the case in order to assist the court, the GAL is not functioning in the traditional manner of an attorney representing a client and thus is not bound by Rule 16–402. We affirm the children's court ruling that there is no statute, rule, or ethical canon that prohibits a GAL from directly contacting a social worker to gain factual information relevant to the representation of the child. The Department should comply with the GAL's requests for such information, which the GAL is statutorily mandated to gather, as a part of its own duty to protect children and act in their best interest. Injunctive relief would be within the province of the children's court if circumstances were to warrant it.

{20} **IT IS SO ORDERED.**

ALARID and ARMIJO, JJ., concur.

---

Model Rules of Professional Conduct Rule 1.13 cmt (1998). This duty is particularly relevant to the current case, in which the "public interest" is a child's welfare. One commentator has suggested that Rule 1.13 be amended to address the unique ethical role of government attorneys. *See* Maureen A. Sanders, *Government Attorneys and the Ethical Rules: Good Souls in Limbo*, 7 BYU J.Pub.L. 39, 77 (1992) (suggesting government attorney *"shall proceed as is reasonably necessary* in the best interests of the government or the public ")*.

2. We note, however, that social workers would not necessarily be parties to a lawsuit against the Department, and, thus, their statements would not necessarily be treated as admissions by party opponents. *See B.H. ex rel. Monahan v. Johnson*, 128 F.R.D. 659, 663 (N.D.Ill.1989).