2003-NMCA-102

76 P.3d 36

**BOARD OF COMMISSIONERS
OF DOÑA ANA COUNTY,**
Petitioner–Appellant,

v.

**LAS CRUCES SUN–NEWS,**
Respondent–Appellee.

No. 22,644.

Court of Appeals of New Mexico.

June 11, 2003.

Lisa L. Warren, County Attorney, Karen E. Wootton, Senior Assistant County Attorney, Las Cruces, NM, for Appellant.

Martin R. Esquivel, Dines, Gross & Esquivel, P.C., Albuquerque, NM, for Appellee.

*OPINION*

BUSTAMANTE, Judge.

{1} The Board of Commissioners of Doña Ana County (the County) refused to promptly disclose certain public records requested by the Las Cruces Sun–News (the Newspaper) pursuant to the Inspection of Public Records Act, NMSA 1978, §§ 14–2–1 to –12 (1999, prior to 2001 amendment) (IPRA). The district court ruled in favor of the Newspaper and ordered the County to pay attorney fees pursuant to Section 14–2–12(D). Three issues are presented: (1) whether it was error to deny the County's motion for protective order, (2) whether the public interests in protecting related criminal and civil proceedings from prejudice outweigh the public interest in the immediate release of information regarding their status, and (3) whether an award of attorney fees was proper under the circumstances. We affirm.

**BACKGROUND**

{2} In September 1999 the Newspaper made a written request under IPRA for a copy of a settlement agreement between the County and former Doña Ana County Detention Center inmate Claudia Moreno, including its terms and amounts, as well as any documents reflecting the attorney fees in-

curred by the County during the course of negotiations. Moreno's civil claims were based on allegations of criminal sexual acts by two former county detention officers. In a second letter, the Newspaper expanded its request to include "any and all documents related to settlements the County of Doña Ana has reached on behalf of the Doña Ana County Detention Center."

{3} In a letter response to these requests, the County acknowledged it was undoubtedly required to release the documents, but claimed a temporary exemption from disclosure under the Risk Management Division (RMD) confidentiality provision, NMSA 1978, § 15–7–9(A)(2) (1981), an exception incorporated through a provision in IPRA exempting confidential documents "as otherwise provided by law." Section 14–2–1(A)(8). The County also cited the countervailing public interests exception recognized in *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 797, 568 P.2d 1236, 1243 (1977), claiming the public interest in protecting public funds by providing a zealous defense, and the public interest in having proceedings free from undue prejudice, tipped the balance in favor of nondisclosure until all related litigation was resolved.

{4} At the time the Petition was filed, there were three civil lawsuits pending by former inmates of the Doña Ana County Detention Center who alleged they had been sexually assaulted by county detention officers while they were incarcerated at the facility. Two additional civil claims had settled, and there were criminal charges pending against six detention officers based on these same allegations. Perhaps anticipating additional requests would be forthcoming because of similar tort claims notices and correspondence threatening litigation it received, the County filed a Petition for Declaratory Decree that "the counterveiling [sic] public policy exception to [IPRA justified] a delay" in disclosing the settlement records to Newspaper, "until all related civil claims and criminal proceedings [were] resolved." The Newspaper counterclaimed that the denial of its request constituted a violation of IPRA and asked the district court to order the

County to disclose the records and award it attorney fees.

{5} Several months after filing the Petition, the County filed a motion for protective order, followed by a motion for summary judgment. Both motions were denied and the district court issued a "final order" holding that the denial of the County's motion for summary judgment was dispositive of the Newspaper's counterclaim for violation of IPRA and awarded the Newspaper attorney fees in the amount of $3353. We remanded the case to district court so it could clarify the final order. The district court entered an Amended Final Order on February 4, 2003, ordering the County to produce the Moreno settlement agreement and any other settlement documents, in related cases, which the Newspaper might request.

## I. MOTION FOR PROTECTIVE ORDER

{6} The County sought a protective order to seal the district court record of the summary judgment proceedings and to maintain the information disclosed during the hearing confidential. The County pursued this avenue in lieu of the in camera review contemplated by *Newsome*. 90 N.M. at 796, 798, 568 P.2d at 1242, 1244. The motion asked that the summary judgment hearing also be closed to the public. We assume the reason for this tack was to allow the parties to argue, and the district court to consider, all of the relevant facts at the summary judgment hearing without making that information public at the hearing.

{7} Rule 1–026(C) NMRA 2003 "permits the district court 'for good cause shown' to issue a protective order 'which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense.'" *John Does I through III v. Roman Catholic Church of the Archdiocese, Inc.*, 1996–NMCA–094, ¶ 13, 122 N.M. 307, 924 P.2d 273. The movant bears the burden to show that "disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Krahling v. Executive Life Ins. Co.*, 1998–NMCA–071, ¶ 15, 125 N.M. 228, 959 P.2d 562 (internal quotation marks and citations omitted). In short, good

cause "must be based on a factual determination of potential harm, not on conclusory statements." *Id.* ¶ 10, 959 P.2d 562. In determining whether good cause has been shown, courts balance "the party's need for information against the injury that might result if uncontrolled disclosure is compelled." *Id.* ¶ 15, 959 P.2d 562.

{8} The district court is given broad discretion in determining whether good cause has been shown and reversal is permitted only for an abuse of discretion. *John Does I through III,* 1996–NMCA–094, ¶ 13, 122 N.M. 307, 924 P.2d 273. "An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances of the case." *Bustos v. Bustos,* 2000–NMCA–040, ¶ 24, 128 N.M. 842, 999 P.2d 1074.

{9} The County argues that the district court needed to consider the nature of the requested information in order to decide whether it could appropriately decide if it could delay disclosure without sanctions. The County provided information as to the number of civil litigants, the alleged perpetrators, the dates, conduct, and nature and extent of injuries alleged, and whether the civil claims had been resolved. The County declined to disclose the details of the then completed settlements to the district court, unless the court first issued a protective order.

{10} As an initial matter, we note there is no order denying the motion for protective order in the record and transcripts of the hearing on the motion were not submitted for our review. We assume, therefore, the district court considered all of the facts provided to it in the County's motions. *Reeves v. Wimberly,* 107 N.M. 231, 236, 755 P.2d 75, 80 (Ct.App.1988) ("Upon a doubtful or deficient record, every presumption is indulged in favor of the correctness and regularity of the trial court's decision, and the appellate court will indulge in reasonable presumptions in support of the [ruling]."). As for the settlement agreements, the County cannot now protest that the district court did not consider the material when it refused to provide this same material absent a pro-

tective order rather than submit it for in camera review as required by *Newsome.*

{11} The Supreme Court has set forth specific procedures to be followed when an exception to IPRA is invoked. *Newsome,* 90 N.M. at 797–98, 568 P.2d at 1243–44. Each inquiry starts with the presumption that public policy favors the right of inspection. *Id.* at 796, 568 P.2d at 1242. To overcome this presumption, a public entity seeking to withhold public records bears the burden of proving why their disclosure would be prejudicial to the public interest. *Id.* at 796, 798, 568 P.2d at 1242, 1244. In assessing the competing public interests, *Newsome* directs courts to apply the "rule of reason" to each case "to determine whether the explanation of the custodian is reasonable and to weigh the benefits to be derived from non-disclosure against the harm which may result if the records are not made available." *Id.* at 797–98, 568 P.2d at 1243–44. To do so, the trial judge must review the materials-preferably in camera-to make an informed decision as to whether the justification for non-disclosure is reasonable. *Id.* at 796, 568 P.2d at 1242. Once the district court has conducted its review, the records are placed under seal of the court and held by the clerk of the court until further order of the district court or appellate court. *Id.* As always, it is the appellant's task to designate the sealed records for review by this Court. *See Williams v. Bd. of County Comm'rs,* 1998–NMCA–090, ¶ 10, 125 N.M. 445, 963 P.2d 522 (appellant has responsibility to provide adequate record for appellate court's review).

{12} The County sought to circumvent this procedure by filing a motion for protective order, asserting to the district court that it could only consider the settlement records if the motion for protective order was granted. The basis for this deviation from established procedure apparently was that the County was only seeking to delay disclosure-albeit indefinitely-rather than permanently deny access to the records. We are at a loss as to why the County would not submit the records to the district court for confidential review. To balance the interests involved, in camera review is most effi-

cient, if not imperative. " 'In no other way can such questions be determined.' " *Newsome,* 90 N.M. at 796, 568 P.2d at 1242 (quoting *Mathews v. Pyle,* 75 Ariz. 76, 251 P.2d 893, 896–97 (1952)). The County's decision to bypass established procedure effectively obstructed full review by the district court and this Court. *See Newsome,* 90 N.M. at 798, 568 P.2d at 1244.

{13} We hold that the district court did not abuse its discretion in denying the County's motion for protective order. The proper procedure was for the County to submit the settlement documents for an in camera review in order for the district court to rule on the motion for summary judgment.

{14} Having affirmed the district court's denial of the motion for protective order under Rule 1–026, we do not reach the First Amendment issues argued by the parties regarding prior restraint of the media and public from the court proceedings. The motion was denied and an open hearing was held. *See Srader v. Verant,* 1998–NMSC–025, ¶ 40, 125 N.M. 521, 964 P.2d 82 (reviewing court will not determine academic or moot questions).

## II. MOTION FOR SUMMARY JUDGMENT

{15} The district court denied the County's motion for summary judgment, finding that "any countervailing public interest in the delay of the release of information about a settlement ... [did] not outweigh the public interest in prompt disclosure." The district court ordered the County to release the requested settlement agreement and any related documents, and to comply with future requests from the Newspaper in related cases. Where there are no material facts in dispute on an appeal from a motion for summary judgment, this Court reviews the district court's legal determination de novo. *Gordon v. Sandoval County Assessor,* 2001–NMCA–044, ¶ 12, 130 N.M. 573, 28 P.3d 1114.

{16} We begin our analysis by emphasizing that every "citizen has a fundamental right to have access to public records."

*Newsome,* 90 N.M. at 797, 568 P.2d at 1243. IPRA allows only a few exceptions:

A. Every person has a right to inspect any public records of this state except:

(1) records pertaining to physical or mental examinations and medical treatment of persons confined to any institution;

(2) letters of reference concerning employment, licensing or permits;

(3) letters or memorandums which are matters of opinion in personnel files or students' cumulative files;

(4) law enforcement records that reveal confidential sources, methods, information or individuals accused but not charged with a crime. Law enforcement records include evidence in any form received or compiled in connection with any criminal investigation or prosecution by any law enforcement or prosecuting agency, including inactive matters or closed investigations to the extent that they contain the information listed above;

(5) as provided by the Confidential Materials Act [14–3A–1, 14–3A–2 NMSA 1978];

(6) trade secrets, attorney-client privileged information and long-range or strategic business plans of public hospitals discussed in a properly closed meeting;

(7) public records containing the identity of or identifying information relating to an applicant or nominee for the position of president of a public institution of higher education; and

(8) as otherwise provided by law.

Section 14–2–1(A). According to our Supreme Court the right to freely inspect public records is limited only by "contrary statute or countervailing public policy." *Newsome,* 90 N.M. at 797, 568 P.2d at 1243.

{17} The County argues for three exceptions under subsection (A)(8) "as otherwise provided by law," citing (1) Section 15–7–9(A)(2), the Risk Management Division confidentiality provision; (2) NMSA 1978, § 10–15–1(H)(7) (1999) providing exceptions to the Open Meetings Act; and (3) countervailing public interests as recognized under *Newsome,* 90 N.M. at 797–98, 568 P.2d at 1243–

44. We discuss each argument separately. For the sake of clarity, we note that the countervailing public policy, or "rule of reason" as it is often referred to, is a nonstatutory confidentiality exception. *Spadaro v. Univ. of N.M. Bd. of Regents,* 107 N.M. 402, 404, 759 P.2d 189, 191 (1988).

## A. Section 15–7–9(A)(2)

{18} Section 15–7–9(A)(2) makes confidential, on threat of criminal conviction, certain records held by RMD. The confidentiality provision reads:

A. The following *records created or maintained by the risk management division* are confidential and shall not be subject to any right of inspection by any person not a state officer, member of the legislature or state employee within the scope of his official duties:

. . . .

(2) records pertaining to claims for damages or other relief against any governmental entity or public officer or employee; provided such records shall be subject to public inspection by New Mexico citizens one hundred eighty days after the latest of the following dates:

(a) the date all statutes of limitation applicable to the claim have run;

(b) the date all litigation involving the claim and the occurrence giving rise thereto has been brought to final judgment and all appeals and rights to appeal have been exhausted;

(c) the date the claim is fully and finally settled; or

(d) the date the claim has been placed on closed status.

(Emphasis added). Although RMD has not insured the County for the past eleven years, the County urges us to construe Section 15–7–9(A)(2) to encompass all public bodies, not just those insured by RMD, despite the clear, unambiguous language limiting confidentiality to "records created or maintained by the risk management division." We decline to do so.

{19} This Court reviews questions of statutory interpretation de novo. *Gordon,* 2001–NMCA–044, ¶ 12, 130 N.M. 573, 28 P.3d

1114. Our primary goal in interpreting statutes is to ascertain legislative intent. *Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers,* 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236. The primary indicator of legislative intent is the statute's plain language. *Gen. Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 76, 703 P.2d 169, 173 (1985). Where the statute's language is clear and unambiguous, we give the statute its plain and ordinary meaning and refrain from further interpretation. *Id.; Key v. Chrysler Motors Corp.,* 1996–NMSC–038, 121 N.M. 764, 769, 918 P.2d 350, 355.

{20} Prior to 1989, insurance coverage through RMD was mandatory for public entities under the Torts Claim Act (TCA), NMSA 1978, §§ 41–4–1 to –29 (1976, as amended through 2001). *See* 1977 N.M. Laws, ch. 386, § 19; 1978 N.M. Laws, ch. 166, § 5; 1979 N.M. Laws, ch. 10, § 1; 1983 N.M. Laws, ch. 301, § 76; 1986 N.M. Laws, ch. 27, § 1 and ch. 102, § 9; 1988 N.M. Laws, ch. 57, § 1. The TCA was amended in 1989, eight years after the confidentiality provision of Section 15–7–9 was enacted, to allow public entities to obtain coverage from sources other than RMD. Section 41–4–25(C). Section 15–7–9, however, has not been amended to extend confidentiality to records held by public bodies that choose coverage from sources other than RMD. The County argues it would be unreasonable not to extend Section 15–7–9(A)(2) to counties who chose to obtain coverage from other sources, merely because the Legislature "forgot" to amend the statute after it amended the TCA.

{21} We cannot disregard the plain language of Section 15–7–9 which makes confidential only those "records created or maintained by the risk management division." There is nothing in the statute to suggest the confidentiality provision of Section 15–7–9 relates to records held by any other insurer. Moreover, it becomes apparent, when one reads the statute as a whole, that the sole purpose of Section 15–7–9 was to establish the risk management division. Everything in the statute is tailored to this purpose: Article 7 is entitled "Risk Management Division," and the sections contained therein describe the establishment of the division and

an advisory board, as well as their duties, powers, and management of public liability funds. In the context of this particular statute then, public entities are merely "clients" of RMD. While public bodies insured by RMD indirectly benefit from the confidentiality provision, the language of the statute and context of the provision indicate the benefit is conferred primarily to RMD, as the insurer, and only incidentally to its insureds.

{22} Nothing in the TCA changes the analysis. Under the TCA, it is "the duty of governmental entities to cover every risk for which immunity has been waived under the [Act]." Section 41–4–20(A). Counties which are insured by RMD contribute money to the public liability fund, which RMD is then authorized to expend to respond to tort liability claims. Section 41–4–23(A), (B); Section 41–4–25(A). When a public entity chooses commercial insurance coverage, it does not contribute to the public fund. Nothing in the TCA suggests the Legislature intended to extend the protection of Section 15–7–9 to funds held by private insurers. *See* § 41–4–25(C).

■■■■ {23} Finally, we cannot say the Legislature "forgot" to reassess Section 15–7–9 after amending the TCA to give public entities a choice between insurers. "The Legislature is presumed to know existing statutory law and to take that law into consideration when enacting new law." *Gutierrez v. West Las Vegas Sch. Dist.,* 2002–NMCA–068, ¶ 15, 132 N.M. 372, 48 P.3d 761. "The decision to extend the scope of an existing statute ... is a matter for the Legislature, and absent an amendment to [Section 15–7–9], we presume that the Legislature continues to intend that the statute apply according to its original meaning." *State v. Cleve,* 1999–NMSC–017, ¶ 15, 127 N.M. 240, 980 P.2d 23. Accordingly, we hold Section 15–7–9 does not prevent disclosure of the requested settlement documents under Section 14–2–1(A)(8), "as otherwise provided by law."

**B. Section 10–15–1(H)**

{24} In New Mexico, the Open Meetings Act protects attorney-client confidentiality by authorizing "closed session" meetings "pertaining to threatened or pending litigation in which the public body is or may become a participant." Section 10–15–1(H)(7); *see Bd. of County Comm'rs v. Ogden,* 117 N.M. 181, 184, 870 P.2d 143, 146 (Ct.App.1994).

■■■■ {25} The attorney-client privilege applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Rule 11–503(B) NMRA 2003. Section 10–15–1(H) incorporates the privilege by protecting confidential communications between attorneys and their public agency clients. *See Ogden,* 117 N.M. at 184, 870 P.2d at 146. However, settlement agreements entered into between parties are outside the privilege. As such, even the County admits the settlement agreements are public record.

{26} Although the Newspaper's general request for "any and all documents related to settlement agreements the County of Doña Ana has reached on behalf of the Doña Ana County Detention Center" might reach privileged material, the County has not made that argument and has not identified any materials that might be privileged. The County's Section 10–15–1(H) argument is utterly without merit.

**C. Countervailing Public Policies**

{27} The County raises two countervailing public policies: (1) the public interest in protecting public funds, and (2) the public interest in obtaining a fair trial. According to the County, disclosure of settlement records would diminish its ability to protect public funds by (1) creating an external incentive for others to assert claims and allege it had actual notice of such claims, (2) interfering with its ability to negotiate fair and reasonable settlements by causing claimants to look beyond the facts of underlying claims to other settlement awards, and (3) impeding the County's right to a fair trial because of pretrial publicity. The County also maintains that pretrial publicity of the information contained in the settlement documents would prejudice the criminal defendants' right to a fair trial.

{28} The trial court ruled countervailing interests did not outweigh public access, and we agree.

### Public Interest in Protecting Public Funds

{29} The interest in protecting public funds does not outweigh the public interest in accessing public records under the circumstances of this case. In essence, the County seeks to keep information from the public on the fear that the information could be used against it to engender phantom claims or to interfere in possible settlements. Nothing in the record indicates these fears are anything more than rank speculation. Even if they were grounded in some fact, however, the County's position overlooks the core purposes of IPRA to provide access to public information and thereby encourage accountability in public officials and employees. "Public business is the public's business." *Newsome*, 90 N.M. at 795, 568 P.2d at 1241 (internal quotation marks and citation omitted). People have a right to know that the people they entrust "with the affairs of government are honestly, faithfully and competently performing their function as public servants." *Id.* (internal quotations and citation omitted). Further, IPRA does not limit how the information might be used.

{30} The County's concerns are misplaced. "[W]hen a member of the public has been wronged by some action or inaction of a government agent, the government's proper goal coincides with that of the injured citizen in uncovering and correcting the wrong[,]" not the narrower interest in prevailing in a lawsuit. *State ex rel. Children, Youth & Families Dep't v. George F.*, 1998–NMCA–119, ¶ 17 n. 1, 125 N.M. 597, 964 P.2d 158 (internal quotation marks and citation omitted). Accordingly, we hold that the public interest in protecting public funds under the facts of this case does not outweigh the right to inspect public records.

### Public Interest in Obtaining a Fair Trial

{31} There are three layers to the County's assertion that the right to a fair trial outweighs the right to access public records, they are: (1) the County will be prejudiced in the remaining civil cases, (2) the public has an interest in criminal trials free from undue prejudice, and (3) defendant's right to a fair trial.

{32} Pretrial publicity does not automatically deprive a party of a fair trial; it does not establish actual prejudice or create a presumption of prejudice. *State v. Lasner*, 2000–NMSC–038, ¶ 26, 129 N.M. 806, 14 P.3d 1282; *State v. Hernandez*, 115 N.M. 6, 21, 846 P.2d 312, 327 (1993); *see State v. House*, 1999–NMSC–014, ¶ 51, 127 N.M. 151, 978 P.2d 967. Like any other party, the County as a party must show by clear and convincing evidence that there is a reasonable probability a fair and impartial trial cannot be had if the information is disclosed. *See id.* ¶¶ 41–44, 978 P.2d 967. The County failed to meet this burden in the civil cases. The record is devoid of any information regarding the nature, extent or timing of existing publicity, the nature of the community, or any other information that would assist in assessing the County's general claim of prejudice. The naked assertion that the fair trial rights of the County in related civil proceedings will be prejudiced is insufficient as a matter of law to establish prejudice to the public interest sufficient to delay disclosure. *Newsome*, 90 N.M. at 796, 798, 568 P.2d at 1242, 1244.

{33} The right to a fair trial in criminal proceedings is a right that is conferred upon defendants under the Sixth and Fourteenth Amendments of the Federal Constitution and N.M. Const. art. II, § 7. Generally, this right is created for the benefit of, and is personal to, the defendant. In this case, it is the County, not defendants in the related criminal proceedings, which is asserting the right. To establish standing to assert an interest of a third-party,

[t]he *litigant* must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests.

*New Mexico Right to Choose/NARAL v. Johnson,* 1999–NMSC–005, ¶ 13, 126 N.M. 788, 975 P.2d 841 (emphasis added) (citation omitted). An injury in fact is "an invasion of a *legally protected interest* which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *John Does I through III,* 1996–NMCA–094, ¶ 17, 122 N.M. 307, 924 P.2d 273 (internal quotations and citation omitted). The County presented no evidence that the harm to it or the individual defendants in the criminal proceedings is anything more than speculation. Absent a factual basis for the alleged injury, the asserted interests in a fair criminal trial are nothing more than "generalized statements . . . [that] are neither substantial nor persuasive." *See State ex rel. N.M. Press Ass'n v. Kaufman,* 98 N.M. 261, 267, 648 P.2d 300, 306 (1982) (good cause not established by generalized statement that publishing picture of defendant in court would prejudice his right to a fair trial).

{34} Moreover, the County has not shown why the individual defendants could not protect their own interests, or even if they were ever made aware of the Petition filed by the County. Defendants could have asserted their right under Rule 1–024(A)(2) NMRA 2003, as well as through traditional safeguards that protect these interests, such as voir dire, motion for change of venue, or jury sequestration. There is no explanation provided why these alternatives were unavailable to defendants or otherwise inadequate. Accordingly, we find that the County lacked standing to assert a public interest in defendant's right to a fair trial.

## III. ATTORNEY FEES

{35} The district court awarded the Newspaper attorney fees pursuant to Section 14–2–12(D) which provides: "[t]he court shall award damages, costs and reasonable attorneys' fees to any person whose written request has been denied and is successful in a court action to enforce the provisions of the Inspection of Public Records Act." The district court found the filing of the Petition for Declaratory Judgment was unreasonable and therefore constituted an unlawful denial under IPRA, and the Newspaper prevailed on its counterclaim. The County argues the Newspaper is not entitled to attorney fees because (1) it brought its action under the Declaratory Judgment Act, NMSA 1978, §§ 44–6–1 to –15 (1975), which does not provide for attorney fees; (2) denial of fees is consistent with Section 14–2–9(B)(4) which prohibits the custodian of records from charging a fee for determining whether the material is subject to disclosure; (3) the request was equivalent to a finding that it was "excessively burdensome" given the lack of legal precedent, Section 14–2–10; and (4) the filing of the Petition was not a "denial" but merely a "delay" until all claims were resolved.

■ {36} The IPRA is the controlling statute in this case, not the Declaratory Judgment Act. Although the County brought an action for declaratory judgment, the Newspaper filed a counterclaim under IPRA. The court found that the Newspaper prevailed under IPRA which provides for attorney fees. *See* Section 14–2–12(D).

■ {37} Under IPRA's "enforcement" provision, an award of attorney fees is mandatory when (1) the request has been denied, and (2) the requester is successful in a court action to enforce the Act. The County seeks to avoid the mandatory language by arguing the Petition was not a "denial" but merely a reasonable "delay" under the circumstances. We disagree. Under the plain language of the "enforcement" provision there is no such distinction. It is clear the Legislature intended to enforce disclosure by imposing a cost-including attorney fees-for nondisclosure within the time frames set by IPRA.

{38} Reading other provisions of IPRA, we find that "delay" is addressed only in Section 14–2–11(A), which provides that:

A. Unless a written request has been determined to be excessively burdensome or broad, a written request for inspection of public records that has not been permitted within fifteen days of receipt by the office of the custodian may be deemed denied. The person requesting the public records may pursue the remedies provided in the [Act].

And Section 14–2–10 which describes the procedure for excessively burdensome requests:

"If a custodian determines that a written request is excessively burdensome or broad, an additional reasonable period of time shall be allowed to comply with the request. The custodian shall provide written notification to the requester within fifteen days of receipt of the request that additional time will be needed to respond to the written request. The requester may deem the request denied and may pursue the remedies available pursuant to the [Act] if the custodian does not permit the records to be inspected in a reasonable period of time."

In other words, a "delay" is not deemed a denial if the materials are produced within fifteen days or "within a reasonable time" if the request is an excessive burden on the agency and notice to this effect is given the requester.

{39} The record does not contain any indication that the County provided written notification to the Newspaper requesting additional time because the request was unreasonably burdensome or broad. And the County does not assert to us that it provided written notification requesting additional time.

{40} The County does seem to argue, for the first time on appeal, that the filing of the Petition was akin to an excessive burden request, in light of the countervailing public interests and absence of any legal authority on the matter. The County did not make this argument to the district court, and we decline to address the issue in this posture. *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) (holding appellate court will not consider argument not presented to court below unless it is jurisdictional).

## IV. CONCLUSION

{41} We affirm the district court's decision that the County's denial of the requested materials was unreasonable and a violation of IPRA. We, thus, also affirm the award of attorney fees.

{42} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge, and IRA ROBINSON, Judge.