# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2009-NMCA-025**

**Filing Date:  February 2, 2009**

**Docket Nos.  27,880 and 27,985 (consolidated)**

**STATE OF NEW MEXICO, ex rel. CHILDREN, YOUTH AND FAMILIES DEPARTMENT,**

 **Petitioner-Appellee,**

**v.**

**JOHN R.,**

 **Respondent-Appellant,**

**and**

**BERLINDA R.,**

 **Respondent,**

**and**

**In the Matter of SABRINA R.,**

 **Child.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Marie Baca, District Judge**

Simon Romo, Chief Children's Court Attorney
Rebecca J. Liggett, Children's Court Attorney
Santa Fe, NM

for Appellee

Caren I. Friedman
Santa Fe, NM

for Appellant John R.

1

Scott M. Davidson
Albuquerque, NM

for Appellant Berlinda R.

Pat Anderson
Bosque Farms, NM

Guardian ad Litem

## OPINION

**BUSTAMANTE, Judge.**

**{1}**     John R. (Father) and Berlinda R. (Mother) (collectively Parents) each appeal from the judgment of the district court terminating their parental rights to their daughter, Sabrina R. (Child).  Parents' rights were terminated based on a finding that Child had been subject to abuse and neglect, the causes of which were unlikely to change in the foreseeable future.

**{2}**     On appeal, Father asserts that the district court committed reversible error by failing to appoint separate counsel for Child when she reached age fourteen during the pendency of the termination proceeding.  Mother's separate appeal asserts that (1) CYFD failed to make reasonable efforts to assist her in alleviating the causes and conditions of neglect, (2) CYFD failed to prove that Mother was unable to alleviate the causes and conditions of neglect, and
(3) the termination of parental rights cannot rest only on the best interests of Child.

**{3}**     We consolidate Parents' appeals and conclude that Father has standing to assert the right-to-counsel issue and that the district court committed reversible error by not appointing separate counsel for Child when she reached the age of fourteen.  Furthermore, we reaffirm our adherence to our statutory mandate to give primary consideration to the best interests of the child in a proceeding to terminate parental rights.  Having found reversible error, we do not address any of Parents' evidentiary arguments.

## BACKGROUND

**{4}**     This termination of parental rights (TPR) case deals with the alleged inability of two developmentally disabled persons to properly care for their physically and mentally disabled child.  CYFD took Child into custody on October 14, 2005, based on a report that Child was being physically abused/neglected by Parents.  The basis for the abuse/neglect allegations was that Child had significant medical needs not being met at home.

**{5}**     Child was twelve years of age when she was taken into CYFD's care and was suffering from complex medical problems and interrelated psycho-social issues.

2

Specifically, Child was suffering from hypothyroidism, obtrusive sleep apnea, enuresis, encopresis, mental retardation, ADHD, a necrotic hip, and morbid obesity. Child was virtually immobile because her weight made it difficult for her to walk, even with a walker, and her wheelchair was broken. Child was also incontinent, her Parents were not using Child's C-Pap machine to treat her sleep apnea, and they were not regularly administering her thyroid medication. Child's untreated health problems placed her at risk for brain damage or mortality unless drastic measures were taken.

{6}     Based on the foregoing facts, the district court found that Child was neglected and that Child's safety and welfare could not be ensured if she were returned to Parents. Custody of Child was ordered to remain with CYFD for up to two years while Parents continued with an ongoing treatment plan aimed at reunifying the family. As part of the treatment plan, Parents were ordered to participate in parenting classes, relationship therapy, weekly semi-supervised visits with Child, nutritional training, and in all of Child's medical and therapeutic appointments.

{7}     As of March 2006, Parents were compliant with their treatment plan and made "great progress" toward learning new parenting and nutritional skills. Child was also progressing under her treatment plan, having lost 120 pounds while in foster care. She was continent, receiving proper medical care, and able to walk without using a walker.

{8}     As a result of Parents' compliance and cooperation, in May 2006 CYFD arranged for Parents to take Child for a trial home visit. Upon returning home, Child's medical condition quickly deteriorated. Child began to gain weight at a rate of two to three pounds per week, her C-Pap machine was not being used to treat her sleep apnea, and she again became incontinent. She also missed health appointments, stopped taking her thyroid medication, began having temper tantrums, and refused to exercise or follow her diet plan.

{9}     Several factors contributed to Child's regression and diminished health and well-being. While Child was in foster care, Parents' relationship had deteriorated and they moved to separate residences. Mother went to live with a new female partner whom Child disliked, and Father moved in with his brother. As a result, Child was going back and forth between Parents. Incidents of domestic violence also took place between Mother, Father, and Child's older brother. These conditions led to a recommendation that Child be put back in foster care. Child was once again removed from Parents in September 2006 and placed back in treatment foster care.

{10}    Upon returning to foster care, Child once again began making strong progress. She began losing weight again, was more continent, and was getting proper nutrition and medical treatment. At first, CYFD's permanency plan remained to continue working toward reunification of the family while keeping Child in temporary foster care. But by January 2007, CYFD changed its recommendation from reunification to "TPR/Adoption," citing Parents' continued inability to appropriately care for Child's physical, medical, and emotional needs.

**{11}**     A TPR motion was filed in January 2007, a two day TPR hearing took place during June, and a final order terminating parental rights was filed on July 2, 2007.   In March, approximately three months before the TPR hearing, Child turned fourteen years old. During the proceeding, Father and Mother were each represented by separate counsel, and Child was represented by a guardian ad litem (GAL), but at no point did she have her own attorney.

**{12}**     At the commencement of the second day of the TPR hearing, Child's GAL pointed out that Child had the right to representation by separate counsel upon reaching age fourteen. The GAL summarized the relevant statute as follows:  "[w]hen a child reaches [fourteen] years of age, a child's guardian ad litem shall continue as the child's attorney, provided that the [c]ourt shall appoint a different attorney for the child if the child requests a different attorney or the guardian ad litem requests to be removed." (internal quotation marks omitted).  The GAL then informed the court that Child was already fourteen years old and that she didn't feel that she could do the job of both GAL and counsel, stating "I don't feel I can be her attorney, due to her . . . mental capacity and . . . all my past work as the GAL."

**{13}**     Alerted to the potential issue posed by Child's having reached fourteen before the hearing, the district court decided to meet with Child before making any determination as to what should be done.  Upon meeting with Child and her GAL, the district court recognized Child's position as desiring reunification with Parents and also recognized that such a position was inconsistent with the recommendation of the GAL.  But the district court noted Child's "extreme immaturity and developmental delays," explaining its concern that Child's maturity level was not that of an average fourteen-year-old, and that the TPR motion was filed before Child's fourteenth birthday.  The district court  reasoned that it would be inappropriate to appoint separate counsel because the GAL had been on the case since its inception, and it would be difficult for anyone else to come up to speed in the case.

**{14}**     Ultimately, the district court decided against appointing separate counsel for Child. The court's finding on the issue was as follows:  "The [c]ourt has also considered the child's expressed opinion on reunification, notes the fact that the child turned fourteen during the pendency of this case and, notwithstanding those facts, finds that it is not appropriate to appoint an attorney for the child."

## DISCUSSION

### Father's Standing

**{15}**     As a preliminary matter, we address CYFD's assertion that Father lacks standing to argue the right-to-counsel issue.  Whether a party has standing to sue is a question of law, which we review de novo.  *See Forest Guardians v. Powell*, 2001-NMCA-028, ¶ 5, 130 N.M. 368, 24 P.3d 803.

**{16}**     CYFD argues that because the right to counsel does not belong to Father, he has

4

suffered no injury in fact, and therefore lacks standing to argue the right-to-counsel issue. In support of its assertion, CYFD cites *Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, 144 N.M. 636, 190 P.3d 1131, for the standing requirement of "an injury in fact."

**{17}** CYFD is correct in its assertion that the right to counsel at issue here belongs to Child and not to Father. However, we do not agree with CYFD's conclusion that Father has not been injured in fact. An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Forest Guardians*, 2001-NMCA-028, ¶ 24 (internal quotation marks and citations omitted). A litigant need not suffer the actual effects of the challenged action, but need only show that there was a real risk of injury. *Rio Grande Kennel Club*, 2008-NMCA-093, ¶ 11.

**{18}** Here, Father has a sufficient injury and a sufficiently concrete interest in the outcome of this matter to satisfy the injury in fact requirement. Father has a legally protected interest in his rights as a parent. *See State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004-NMCA-083, ¶ 24, 136 N.M. 53, 94 P.3d 796 ("A parent's fundamental liberty interest in the care, custody, and management of their children is well established."). Termination of this right presents an actual and concrete invasion of that protected interest. For purposes of standing, we need not determine whether failure to appoint counsel for Child was the actual cause of this injury. It is sufficient that it presented a "real risk of injury," in that it could have affected the course of the trial and whether Father's rights as a parent would ultimately be terminated. *See In re Christina M.*, 908 A.2d 1073, 1080 (Conn. 2006) (recognizing that the inadequate representation of a child in a TPR case could affect the outcome, and thus a parent has a claim of injury sufficient to confer standing).

**Failure to Appoint Separate Counsel at Age Fourteen**

**{19}** Father argues that the district court erred in failing to appoint separate counsel for Child when she reached fourteen years of age during the pendency of the TPR proceeding. He argues that when Child turned fourteen, one of her "basic rights" was to have a different attorney appointed to represent her pursuant to NMSA 1978, Section 32A-4-10(E) (2005), and that failure to so appoint was reversible error. We hold that failure to appoint counsel for Child is reversible error because it was prejudicial to Child and violated the Children's Code.

**{20}** The issue of whether the district court erred in failing to appoint separate counsel for Child when she reached fourteen is a question of law that we review de novo. *State ex rel. Children, Youth & Families Dep't v. Brandy S.*, 2007-NMCA-135, ¶ 17, 142 N.M. 705, 168 P.3d 1129. "To warrant reversal, error must be prejudicial." *McNeill v. Burlington Res. Oil & Gas Co.*, 2008-NMSC-022, ¶ 21, 143 N.M. 740, 182 P.3d 121.

**{21}** The relevant provisions of the Children's Code provide different rights to

5

representation based on whether a child is younger or older than fourteen. *See* § 32A-4-10(C), (E). First, if at the inception of an abuse and neglect proceeding a child is under fourteen years of age, the court is required to appoint a GAL for the child. Section 32A-4-10(C). If, on the other hand, the child is fourteen years of age or older, the court is required to appoint an attorney for the child. *Id.* With respect to each, the court is required to ensure that the GAL "zealously represents the child's best interest[s,] and that the . . . attorney zealously represents the child." Section 32A-4-10(F). A child's attorney also has a duty to provide "the same manner of legal representation and be bound by the same duties to the child as is due an adult client, in accordance with the rules of professional conduct." NMSA 1978, § 32A-1-7.1(A) (2005).

**{22}** Here, Child was thirteen when the TPR motion was filed, but turned fourteen before any TPR hearing was held. The Children's Code also addresses these circumstances where a proceeding commences before a child reaches fourteen and continues beyond the child's fourteenth birthday. *See* § 32A-4-10(E). The relevant section of the Children's Code is as follows:

> When a child reaches fourteen years of age, the child's guardian ad litem shall continue as the child's attorney; provided that the court shall appoint a different attorney for the child if:
>
> (1)     the child requests a different attorney;
>
> (2)     the guardian ad litem requests to be removed; or
>
> (3)     the court determines that the appointment of a different attorney is appropriate.

*Id.* Pursuant to the Uniform Statute and Rule Construction Act, we interpret this section as imposing a requirement that the court must appoint separate counsel for a child if any one of the three conditions is satisfied. *See* NMSA 1978, § 12-2A-4(A) (1997) (defining the word "shall" as expressing a duty, obligation, or requirement).

**{23}** The district court judge recognized the requirement of Section 32A-4-10(E), but determined that appointment of an attorney for Child was inappropriate under the circumstances of this case. Pursuant to the statute, a district court does not have such discretion (1) if the child requests a different attorney, or (2) if the child's GAL requests to be removed. Here, Child's GAL effectively requested removal when she stated that she could not act as Child's attorney. Therefore, given the mandatory nature of the statute, the trial judge lacked the discretion not to appoint a different attorney for Child. *See* § 32A-4-10(E)(3).

**{24}** Even if the GAL's statement were to be interpreted as something less than a request for removal, it was at least sufficient notice that Child was not being afforded her full rights under the Children's Code—specifically, Child's right to zealous representation in her own right. Alerted to

6

the potential that Child's interests were not fully protected, the district court's obligation was to remedy the deficiency by appointing separate counsel for Child. Absent separate counsel, Child's position was not fully developed, and Child was therefore prejudiced by not being afforded her full right to representation.

**{25}** To the extent, if any, that the district court had discretion not to appoint separate counsel for Child in this case, consideration of Child's mental age should not have been part of its analysis. Although we are mindful of the fact that Child may not function at the mental age of fourteen, it does not affect the requirements of the statute. Longstanding precedent in interpreting the Children's Code is that references to age are references to years of age, not mental age. *State v. Doe*, 97 N.M. 598, 601, 642 P.2d 201, 204 (Ct. App. 1982). Therefore, Child's mental age should not have been a factor in determining whether to appoint a separate attorney.

**{26}** Separate counsel should have been appointed for Child, even if the GAL continued to advocate for Child's best interest. Some circumstances may require the services of both an attorney and a GAL and, absent a conflict, a GAL may serve a dual role fulfilling the obligations of both. *See State ex rel. Children, Youth & Families Dep't v. George F.*, 1998-NMCA-119, ¶ 11, 125 N.M. 597, 964 P.2d 158 (observing that a GAL can serve two distinct roles as an advocate for a child's best interests and an advocate for a child's position). This may be the case, for example, when a child's position is exactly aligned with her best interests. However, it is clear that here, Child's GAL could not serve such a dual role because Child herself desired reunification with Parents, while the GAL deemed TPR to be in Child's best interests. Therefore, separate counsel should have been appointed even if the district court determined that Child's GAL should also remain a part of the proceeding because of her background and knowledge of the case.

**Best-Interests-of-the-Child Standard**

**{27}** Mother argues that it was improper to decide the TPR hearing based on Child's best interests, and that her fundamental rights as a parent should have also been considered. The Children's Code provides that, in proceedings to terminate parental rights, the court must "give primary consideration to the physical, mental and emotional welfare and needs of the child, including the likelihood of the child being adopted if parental rights are terminated." NMSA 1978, § 32A-4-28(A) (2005). Mother's argument is unpersuasive. First, as previously noted, a parent has a fundamental interest in the care, custody, and control of his or her children. *See Maria C.*, 2004-NMCA-083, ¶ 24. But "[i]t is well established . . . that parents do not have absolute rights in their children; rather, parental rights are secondary to the best interests and welfare of the children." *In re Adoption of Francisco A.*, 116 N.M. 708, 714, 866 P.2d 1175, 1181 (Ct. App. 1993). Aside from expressing disagreement with this standard, Mother presents no argument for setting it aside, and we are unconvinced that we should do so. Second, Mother fails to recognize that due process of law provides safeguards against erroneous deprivation of parental rights. Here, Mother does not allege that she was not afforded due process and, even if she had, we find nothing in the record to support such an argument. Therefore, contrary to Mother's assertion, her fundamental rights were given proper consideration in the TPR proceeding.

7

**CONCLUSION**

{28}   For the foregoing reasons, we reverse the district court's termination of Parents' parental rights to Child and remand for further proceedings consistent with this opinion.

{29}   **IT IS SO ORDERED.**

_____

                                          **MICHAEL D. BUSTAMANTE, Judge**


**WE CONCUR:**


_____

**CYNTHIA A. FRY, Chief Judge**


_____

**MICHAEL E. VIGIL, Judge**


Topic Index for *State of N.M. ex rel CYFD v. John R.* Nos. 27,880/27,985

| **AE** | **Appeal and Error** |
|---|---|
| AE-RE | Reversible Error |

| **CD** | **Children** |
|---|---|
| CD-AT | Appointed Attorney or Guardian Ad Litem |
| CD-BI | Best Interests of Child |
| CD-CC | Children's Code |
| CD-TR | Termination of Parental Rights |

| **CL** | **Criminal Law** |
|---|---|
| CL-CN | Child Abuse and Neglect |

| **CA** | **Criminal Procedure** |
|---|---|
| CA- SG | Standing |

| **DR** | **Domestic Relations** |
|---|---|
| DR-NA | Neglect and Abuse |
| DR-PR | Parental Rights |
| DR-TR | Termination of Parental Rights |
| DR-UF | Unfit Parents |