2008-NMCA-093

190 P.3d 1131

**RIO GRANDE KENNEL CLUB, a New Mexico corporation, Juxi Burr, Ruth Davis, Julia Kirkpatrick, Mike Melloy, Ken Sweeney, Ross Jones, Cherie Starr, and Paula Fay, Individually, Plaintiffs–Appellants,**

v.

**CITY OF ALBUQUERQUE, Defendant–Appellee.**

No. 27,207.

Court of Appeals of New Mexico.

June 2, 2008.

Wiggins, Williams & Wiggins, P.C., Patricia G. Williams, Lorna M. Wiggins, Albuquerque, NM, for Appellants.

Robert M. White, City Attorney, Greg Wheeler, Assistant City Attorney, Peter Peirotti, Assistant City Attorney, Albuquerque, NM, for Appellee.

## OPINION

BUSTAMANTE, Judge.

{1} The Rio Grande Kennel Club and a number of individual dog owners, kennel owners, and veterinarians (collectively, Plaintiffs) filed a complaint in the district court seeking declaratory judgment and injunctive relief against the City of Albuquerque (the City) regarding the City's Humane and Ethical Animal Regulations and Treatment ordinance (HEART). HEART regulates the ownership and care of certain animals. Plaintiffs sought to have HEART declared unconstitutional for numerous reasons. The City moved to dismiss Plaintiffs' claims. After considering the arguments, the district court found that two provisions of HEART were unenforceable. However, because the provisions were severable, the district court removed those sections and dismissed Plaintiffs' complaint with respect to the remainder of HEART. Plaintiffs appeal on numerous grounds relating to their claim that HEART is unconstitutional. We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

{2} Plaintiffs' complaint alleged that HEART: (1) violates due process by forcing the sterilization of certain pets, which constitutes a taking without just compensation; (2) violates federal and state rights to procedural due process because it subjects citizens to criminal sanctions and loss of property through City administrative proceedings without a "true right of appeal," as well as unreasonable searches and seizures under a provision allowing arbitrary inspections of a pet owner's premises; (3) violates federal and state rights to substantive due process and equal protection because it serves no legitimate government purpose; (4) violates the constitutional prohibition against ex post facto laws because it criminalizes previously legal activities; (5) violates provisions of the New Mexico Constitution regarding ownership of property, equal protection, ex post facto laws, and unreasonable searches and seizures; (6) is preempted by federal law; (7) is preempted by state law; (8) violates the federal commerce clause; (9) impedes freedom of contract; (10) is unconstitutionally vague; (11) contains an impermissible excise tax; and (12) violates the Fourth Amendment because it allows animal control officers to conduct warrantless searches. Plaintiffs requested, among other things, that the district court declare HEART unconstitutional and enjoin the City from enforcing HEART. Plaintiffs thereafter filed a motion for temporary restraining order (TRO) and preliminary injunctive relief.

{3} The City filed five motions to dismiss Plaintiffs' complaint, including: (1) a motion to dismiss Plaintiffs' takings claims; (2) a motion to dismiss Plaintiffs' state constitutional claims, all due process claims and Fourth Amendment claims; (3) a motion to dismiss Plaintiffs' claims for equitable relief; (4) a motion to dismiss Plaintiffs' preemption and commerce clause claims; and (5) a motion to dismiss miscellaneous claims regarding whether HEART contains an unconstitutional lemon law, impedes freedom of contract, is unconstitutionally vague, constitutes an impermissible ex post facto law, and contains an impermissible excise tax. The district court held a hearing on Plaintiffs' application for preliminary injunction and the City's motions to dismiss on September 18, 2006.

{4} The district court entered a memorandum opinion and order on October 2, 2006, granting the City's motions to dismiss Plaintiffs' claims, with two exceptions:

First, HEART's authorization of warrantless, unannounced inspections ... constitutes a violation of the constitutional protection against unreasonable search and seizure. Second, HEART's requirements regarding kennels ..., including the addi-

tion of fire suppression and radiant floor heating systems, constitute a substantive due process violation. Thus, these provisions of HEART are unenforceable. As the ordinance contains a severability clause, the remainder of the ordinance is valid.

Plaintiffs timely filed a notice of appeal from that order. The City did not cross-appeal the district court's conclusion that portions of HEART are unenforceable.

{5} Plaintiffs' claims on appeal are substantially similar to the ones they raised below, although they have abandoned several of them. In addition to their remaining constitutional claims, Plaintiffs assert that the district court erred by dismissing the complaint: (1) based on an undeveloped record, and (2) without allowing Plaintiffs to amend the complaint. The City, in addition to the defenses it raised below, urges us to affirm on the grounds that: (1) Plaintiffs lack standing, (2) Plaintiffs did not seek leave to amend the complaint, (3) development of the record was unnecessary because Plaintiffs made a facial challenge to HEART, and (4) even if facts were material below, the district court correctly entered summary judgment because Plaintiffs introduced matters outside the pleadings.

{6} We first address the issue regarding Plaintiffs' standing. We next examine Plaintiffs' procedural attacks on the district court's order dismissing the case. Finally, we consider Plaintiffs' various constitutional claims.

## DISCUSSION

### 1. Standing

{7} The City raises the issue of standing for the first time on appeal, which it is permitted to do. *See Town of Mesilla v. City of Las Cruces*, 120 N.M. 69, 70, 898 P.2d 121, 122 (Ct.App.1995) ("[S]tanding is a jurisdictional question that may be raised at any time during the pendency of a proceeding." (internal quotation marks and citation omitted)); *but see Williams v. Stewart*, 2005-NMCA-061, ¶ 24, 137 N.M. 420, 112 P.3d 281 (noting that "even when issues may be raised for the first time on appeal, issues that rely

on facts may not be reviewable based on the state of the record"). "The determination of whether a party has standing to sue is a question of law, which we review de novo." *Forest Guardians v. Powell*, 2001-NMCA-028, ¶ 5, 130 N.M. 368, 24 P.3d 803.

{8} "To acquire standing, a plaintiff must demonstrate the existence of (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Id.* ¶ 16 (internal quotation marks and citation omitted). Our Supreme Court has held that a plaintiff can meet the first element—injury in fact—by alleging an intention to engage in conduct "arguably affected with a constitutional interest, but proscribed by a statute, [when] there exists a credible threat of prosecution thereunder." *Am. Civil Liberties Union v. City of Albuquerque*, 1999-NMSC-044, ¶ 9, 128 N.M. 315, 992 P.2d 866 (internal quotation marks and citation omitted). However, "a plaintiff must also show that the injury alleged is within the zone of interests to be protected by a constitutional provision or statute." *Forest Guardians*, 2001-NMCA-028, ¶ 19.

{9} We conclude that Plaintiffs have alleged sufficient facts to confer standing in the present case. Plaintiffs alleged that each of them either owns animals or runs a business that is subject to HEART. Plaintiffs further alleged that they have standing because HEART would curtail their previously lawful activities and burden their civil liberties. For example, Plaintiffs alleged that: (1) the sterilization provisions in HEART would impair some of Plaintiffs' property interests in breeding and showing their animals; and (2) the requirements in HEART for housing and restraining animals are unreasonable. Therefore, Plaintiffs sufficiently alleged an adequate threat of imminent injury resulting from the application of HEART that would be redressed by a finding that HEART is unconstitutional in the manner Plaintiffs have alleged. *See id.* ¶ 16.

### 2. Development of the Factual Record

{10} Plaintiffs argue that the district court should have allowed them to de-

velop a factual record prior to granting the City's motions to dismiss. We note, however, that development of the factual record was immaterial to the district court's evaluation of the City's motions to dismiss.

> A motion to dismiss pursuant to [Rule] 1–012(B)(6) [NMRA 2003] tests the legal sufficiency of the complaint. In reviewing an order granting a motion to dismiss, we accept as true all facts properly pleaded. A complaint is subject to dismissal under [Rule] 1–012(B)(6) only if under no state of facts provable thereunder would a plaintiff be entitled to relief. . . . Under this standard of review only the law applicable to such claim is tested, *not the facts which support it.*

*Hovet v. Lujan,* 2003–NMCA–061, ¶ 8, 133 N.M. 611, 66 P.3d 980 (emphasis added) (alterations in original) (internal quotation marks and citation omitted). We conclude that the district court was not required to allow Plaintiffs to develop the factual record in order to decide the motions to dismiss. Accordingly, we need not address the City's argument that the affidavits Plaintiffs submitted in support of their motion for injunctive relief converted the motion to dismiss into a motion for summary judgment.

### 3. Amendment of the Complaint

{11} Plaintiffs assert that the district court should have allowed them to amend the complaint prior to granting the motions to dismiss. Rule 1–015 NMRA governs amendments to pleadings and provides, in pertinent part, as follows:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served . . . . [o]therwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Rule 1–015(A). The City claims that Rule 1–015 required Plaintiffs to seek leave of court to file a motion to amend their complaint because the City answered the complaint and filed motions to dismiss. The City also asserts that Plaintiffs failed to explain in their appellate briefs how they preserved this issue below. *See* Rule 12–213(A)(4) NMRA (requiring "a statement explaining how the issue was preserved in the court below").

{12} Plaintiffs' brief in chief reveals that they requested an opportunity to amend the complaint in their responses to two of the City's motions to dismiss and alluded to the possibility of amending the complaint during the hearing on the motions. However, neither the brief in chief nor Plaintiffs' reply brief explains whether the district court ever ruled on Plaintiffs' requests to amend. *See* Rule 12–216(A) ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"). Although we are not required to comb the record, *see State v. Paiz,* 2006–NMCA–144, ¶ 42, 140 N.M. 815, 149 P.3d 579, we have reviewed the hearing transcript and the district court's order and note that in neither document does the district court mention—much less rule upon—Plaintiffs' requests to amend.

{13} Therefore, even assuming Plaintiffs have satisfied the briefing requirements of Rule 12–213(A)(4), we conclude that Plaintiffs failed to preserve the issue regarding amendment of their complaint because they did not invoke a ruling from the district court on that issue. Rule 12–216(A). Furthermore, Plaintiffs have failed to identify, both in the court below and in their appellate briefs, how amendment of their complaint would have furthered the ends of justice. *See Slide–A–Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces,* 105 N.M. 433, 436, 733 P.2d 1316, 1319 (1987) (holding that district court did not abuse its discretion in denying plaintiff's motion to amend where plaintiff failed to explain why justice required allowance of the amendment). Accordingly, we cannot say that the district court erred by failing to allow Plaintiffs to amend their complaint. We now turn to our discussion of Plaintiffs' various constitutional claims.

### 4. Excise Tax

{14} Plaintiffs claim that HEART imposes an impermissible excise tax. Excise is defined as "[a] tax imposed on the manufacture, sale, or use of goods . . . or on an occupation or activity[.]" *Black's Law Dictionary* 605 (8th ed.2004). Apart from cer-

tain exceptions that are not relevant here, a municipality may impose an excise tax "if the products and services taxed are each named specifically in the ordinance imposing the tax on them and if the ordinance is approved by a majority vote in the municipality." NMSA 1978, § 3–18–2(D) (1980). The New Mexico Constitution also provides that "[n]o tax imposed by the governing body of a charter municipality, except a tax authorized by general law, shall become effective until approved by a majority vote in the charter municipality." N.M. Const. art. X, § 6(D).

{15} Plaintiffs identify the following ·section of HEART as imposing an impermissible excise tax:

> There is hereby created a [HEART] Ordinance Fund; 60% of all net License and Permit fees collected under the HEART Ordinance shall be deposited in the HEART Ordinance Fund. HEART Ordinance Fund monies are dedicated exclusively to programs for the free microchipping and the free spaying and neutering of Companion Animals for Low Income Persons, Moderate Income Persons, Seniors and when possible, the general public. All fees listed in this ordinance are a minimum fee amount and may be increased administratively by the Mayor.

Albuquerque, NM, HEART Ordinance, § 9–2–3–16(A) (2006). Plaintiffs claim that HEART's fee structure is designed primarily as a revenue measure—and therefore constitutes an excise tax—because HEART contemplates that the City will allocate sixty percent of all net license and permit fees to provide free microchipping and sterilization of animals owned by low income people. Therefore, Plaintiffs argue that HEART's fee provisions are invalid because: (1) the City failed to seek approval for an excise tax by majority vote in the municipality as required under Section 3–18–2(D); and (2) the fees are not reasonably related to the cost of regulating permit and license holders.

{16} The City responds that Plaintiffs have misread Section 9–2–3–16(A) of HEART in that "net License and Permit fees" only refers to funds collected in excess of costs, not all funds collected. The City also claims that the issue is not ripe because there was no showing in the district court that the City will actually collect fees in excess of costs. Finally, the City cites the case of *City of Lovington v. Hall,* 68 N.M. 143, 145, 359 P.2d 769, 770–71 (1961), which states:

> The mere fact that such license fees produce some excess revenue does not render the ordinance invalid, but [the fees] must be incidental to regulation and not primarily for the purpose of producing revenue. And the license fee which a municipality may exact must bear some reasonable relation to the added burden and expense to the city by reason of such regulation.

(Internal quotation marks and citations omitted).

{17} Relying on the above passage from *Hall,* the district court concluded that "[t]he license fees to be generated bear a reasonable relation to the expense on [the City] by reason of the regulation, and any excess revenue would appear to be incidental." However, the district court did not indicate the basis for this conclusion. As noted above, the district court did not hear any evidence in connection with the City's motions to dismiss. We regard the district court's ruling as concluding that HEART's license and permit fees were reasonable on the face of the ordinance.

{18} The district court erred in concluding that HEART's license and permit fees were reasonable in the context of deciding a Rule 1–012(B)(6) motion. The issue regarding the reasonableness of these fees presented a question of fact requiring the district court to weigh evidence. *See Carlyle Group, Inc. v. Warwick Twp.,* 28 Pa. D. & C.4th 542, 550, 1993 WL 840580, *6 (Pa.Com.Pl.1993) (noting that the reasonableness of an ordinance containing a fee to recover the capital cost of a water system presented a question of fact). The standard for granting a motion to dismiss pursuant to Rule 1–012(B)(6) requires that no state of facts provable under plaintiffs' complaint would entitle plaintiffs to relief. *Hovet,* 2003–NMCA–061, ¶ 8. Facts may exist to prove that the fee provisions in HEART are excessive or unreasonable with respect to the cost of regulation.

{19} Accordingly, viewing the allegations in the light most favorable to Plaintiffs, we conclude that Plaintiffs have sufficiently pleaded a cause of action under Section 3–18–2(D) and N.M. Const. art. X, § 6(D) to survive the City's motion to dismiss on this issue. Although the district court was not required to hear evidence in order to rule on the City's motion to dismiss, the district court should have denied the motion so that the parties could present evidence regarding the reasonableness of HEART's fee provisions. We therefore remand to the district court to make a determination regarding the reasonableness of HEART's fee structure based on further development of the factual record. We note that a substantial period of time has elapsed since HEART went into effect in October 2006; therefore, ample data should now exist regarding whether the City has collected fees that are unreasonably in excess of the cost of regulation.

## 5. Due Process

{20} Plaintiffs raise a variety of claims relating to provisions of HEART that they assert are violative of due process. Plaintiffs allege that HEART contains provisions that: (1) effect a taking without just compensation; (2) subject citizens to criminal sanctions and loss of property without an impartial hearing or "true" right of appeal; (3) impose criminal and civil penalties for the same behavior; (4) allow the Mayor to impose moratoria on the issuance of permits without restriction; and (5) are unconstitutionally vague. We address each of these issues in turn.

### A. Takings Without Just Compensation

{21} Plaintiffs assert that application of Section 9–2–3–6 of HEART will result in a taking without just compensation by the City in violation of the United States and New Mexico Constitutions. See U.S. Const. amend. V; N.M. Const. art. II, § 20. Among other things, Section 9–2–3–6 requires owners of intact (unsterilized) companion animals to obtain a permit and sets a limit of four intact companion animals per household. Plaintiffs allege that: (1) sterilization of their companion animals will result in loss of the animals' economic value; and

(2) the limitation on the number of intact companion animals per household will render hobby breeders unable to continue their breeding programs. In sum, Plaintiffs maintain that HEART effects a compensable taking because application of Section 9–2–3–6 will leave them with no commercially viable use for their animals.

{22} We conclude that the question of whether application of Section 9–2–3–6 would result in a compensable taking is not ripe for judicial determination. In *Garcia v. Village of Tijeras*, 108 N.M. 116, 124, 767 P.2d 355, 363 (Ct.App.1988), we held that "the question of whether the provision for destruction [of American Pit Bull Terriers] is a compensable taking is not ripe for judicial determination" where the record did not contain a claim that any dog had been destroyed or threatened with destruction. *See also City of Sunland Park v. Santa Teresa Servs. Co.*, 2003–NMCA–106, ¶ 70, 134 N.M. 243, 75 P.3d 843 (holding that inverse condemnation claim was not ripe where claim was based on potential and not actual damage).

{23} Similarly, in the present case, there is no allegation that Plaintiffs have suffered an actual economic loss as a result of the application of Section 9–2–3–6 of HEART. Although Plaintiffs have sufficiently alleged their intent to violate HEART in order to confer standing, the same cannot be said for Plaintiffs' claim that Section 9–2–3–6 will result in a taking without just compensation. Such a claim depends heavily on the specific circumstances of each Plaintiff at the time the City enforces HEART against that individual. Because Plaintiffs are making a facial challenge to HEART, instead of an "as applied" challenge, Plaintiffs do not allege that any such enforcement action against them has taken place.

{24} The United States Supreme Court has stated that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 105

S.Ct. 3108, 87 L.Ed.2d 126 (1985). Thus, absent the concrete factual background of an enforcement action by the City, Plaintiffs' takings claim is entirely theoretical and, therefore, premature. *See Skull Valley Band of Goshute Indians v. Nielson,* 376 F.3d 1223, 1237 (10th Cir.2004) ("[T]he doctrine of ripeness is intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."); *contra Verizon Wireless (VAW) LLC v. City of Rio Rancho,* 476 F.Supp.2d 1325, 1332 (D.N.M.2007) (holding that facial attack on city ordinance based on federal preemption was ripe because the issues were purely legal and "[t]he case does not hinge on uncertain events that may not happen").

▋ {25} Moreover, even if we were to assume that application of Section 9–2–3–6 might result in a compensable taking, Plaintiffs have not alleged that just compensation would be unavailable to them. The absence of this allegation is fatal to Plaintiffs' takings claim because "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking *without just compensation.*" *Williamson County,* 473 U.S. at 194, 105 S.Ct. 3108 (emphasis added); *see also San Remo Hotel v. City & County of San Francisco,* 145 F.3d 1095, 1101–02 (9th Cir.1998) ("[A] facial takings claim alleging the denial of the economically viable use of one's property is unripe until the owner has sought, and been denied, just compensation by the state."); *Cf. ConocoPhillips Co. v. Henry,* 520 F.Supp.2d 1282, 1316–17 (N.D.Okla.2007) (holding that there could be no takings clause violation where plaintiffs failed to allege that they suffered economic harm).

{26} The district court addressed Plaintiffs' takings claim on the merits and concluded that application of HEART would not effect a compensable taking. The district court therefore dismissed Plaintiffs' takings claim. This is the same result the district court would have reached had it concluded, as we do, that the issue is not ripe for judicial determination. We therefore affirm the district court's dismissal of the takings claim, even though we disagree with the district court's reasoning. *See Bustamante v. City of Las Cruces,* 114 N.M. 179, 182, 836 P.2d 98, 101 (Ct.App.1992) ("[T]his court will affirm a lower court's decision that reaches the correct result for the wrong reason.").

**B. Administrative Hearings, Penalties and Appellate Review**

▋ {27} Plaintiffs claim that HEART violates due process because it subjects citizens to criminal sanctions and loss of property without an impartial hearing or a "true" right of appeal. HEART provides for administrative hearings and penalties in Section 9–2–7–1. Plaintiffs specifically object to the lack of a mechanism in Section 9–2–7–1 for selecting an impartial hearing officer to preside over hearings from which criminal sanctions and loss of property can result. However, Plaintiffs provide no argument or authority to support their assertion that HEART prevents citizens from exercising a "true" right to appeal the decision of an administrative hearing officer. Although we are not required to consider Plaintiffs' argument concerning the availability of appellate review, *see* Rule 12–213(A)(4) (requiring that an appellant's brief in chief contain "an argument which, with respect to each issue presented ..., shall set forth a specific attack on any finding, or such finding shall be deemed conclusive"), we address the issue summarily by noting that appellate review by writ of certiorari of administrative proceedings is available under Rule 1–075(A) NMRA "when there is no statutory right to an appeal or other statutory right of review."

▋ {28} With respect to Plaintiffs' claims regarding the potential bias of HEART administrative hearing officers, it appears that Plaintiffs raise this argument for the first time in their brief in chief and expand upon it in their reply brief. Our review of the record does not reveal any instance in which Plaintiffs alerted the district court to this issue, and the district court's order makes no mention of it. We therefore decline to address this issue for lack of preservation. *See* Rule 12–216(A) ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]").

{29} Plaintiffs further assert that HEART violates the Constitution because it enables administrative hearing officers to impose simultaneously criminal and civil sanctions on HEART violators. The district court rejected this argument and noted that the City "can adopt and enforce ordinances, including HEART, to be prosecuted in metropolitan court, pursuant to NMSA 1978, § 3–17–1 (1993)." Plaintiffs have not provided us with any reason to question this aspect of the district court's order and they have not demonstrated why misdemeanor violations of HEART could not be tried in metropolitan court concurrently with administrative civil proceedings. We see no basis for Plaintiffs' position that HEART requires misdemeanor violations to be tried by an administrative hearing officer. We conclude that HEART does not violate due process in this respect.

{30} Finally, Plaintiffs make passing reference to procedural irregularities in the promulgation of HEART and in the City's amendment of HEART following the filing of this lawsuit. Plaintiffs did not support these claims with arguments as required under Rule 12–213(A)(4). We therefore do not address those claims.

## C. Moratoria on Permits

{31} Plaintiffs allege that the ability of the Mayor or the City to impose moratoria on the issuance of permits under HEART violates due process. This allegation appears for the first time in Plaintiffs' brief in chief and Plaintiffs cite no authority in support of the allegation. We therefore do not address this claim. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) ("We have long held that to present an issue on appeal for review, an appellant must submit argument *and authority* as required by rule."); *see also* Rule 12–213(A)(4) (requiring that arguments in the briefs contain "a statement explaining how the issue was preserved ... below, with citations to authorities."); Rule 12–216(A).

## D. Vagueness

{32} Plaintiffs claim that provisions of HEART "are unconstitutionally vague because they lack sufficient definiteness such that ordinary people could understand their meaning, or because they are worded in such a vague manner as to encourage arbitrary, or discriminatory enforcement, in violation of the Fourteenth Amendment." Apart from this conclusory statement, Plaintiffs do no more in their brief in chief than to identify the provisions that they believe are unconstitutionally vague. Plaintiffs fail to set forth substantive arguments and authority as required by the rules of appellate procedure. Rule 12–213(A)(4). We note that, because Plaintiffs are making a facial vagueness challenge, their burden is high to show that HEART "is drafted so as to be impermissibly vague in all its applications." *N.M. Mining Ass'n v. Water Quality Control Comm'n*, 2007–NMCA–084, ¶ 27, 142 N.M. 200, 164 P.3d 81 (internal quotation marks and citation omitted); *see also Garcia*, 108 N.M. at 119, 767 P.2d at 358 ("A statute is not void for vagueness when a purely facial attack is made alleging uncertainty in its application to hypothetical parties."). Plaintiffs have not met their burden by merely stating that certain provisions are unconstitutionally vague.

## E. Preemption

{33} Plaintiffs argue that federal and state laws preempt HEART. More specifically, Plaintiffs claim that HEART is preempted by: (1) the federal Animal Welfare Act, 7 U.S.C. §§ 2131–2156 (1966, as amended through 2007) (AWA); (2) the New Mexico Livestock Code, NMSA 1978, §§ 77–1–1, –3, –5, –6, –10, –15.1, –17 and –20 (1912, as amended through 1993); (3) the cruelty to animals statute, NMSA 1978, §§ 30–18–1 and –9 (2007); and (4) the New Mexico Veterinary Practice Act, NMSA 1978, § 61–14–1 to –20 (1967, as amended through 2005).

{34} The preemption doctrine is rooted in the supremacy clause of the United States Constitution, which provides that "the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. We have previously noted that "[c]ourts apply a strong presumption against

preemption, particularly in areas of law that are traditionally left to state regulation." *Lohman v. Daimler–Chrysler Corp.*, 2007–NMCA–100, ¶ 15, 142 N.M. 437, 166 P.3d 1091. "The party claiming preemption must show a clear and manifest intent of Congress to preempt." *Id.*

 {35} Several courts have found that AWA does not reflect congressional intent to preempt state and local legislation regarding animal welfare. *See, e.g., DeHart v. Town of Austin, Ind.*, 39 F.3d 718, 722 (7th Cir.1994); *Kerr v. Kimmell*, 740 F.Supp. 1525, 1530 (D.Kan.1990); *Hendricks County Bd. of Zoning Appeals v. Barlow*, 656 N.E.2d 481, 484–85 (Ind.Ct.App.1995). These courts have noted that Sections 2143(a)(8) and 2145(b) of AWA expressly contemplate that state and municipal governments would continue to legislate in the area of animal welfare. *DeHart*, 39 F.3d at 722; *Barlow*, 656 N.E.2d at 484–85; *Kerr*, 740 F.Supp. at 1530. Section 2143(a)(8) provides that the statutory authority delegated to the Secretary of Agriculture to "promulgate standards to govern the humane handling, care, treatment, and transportation of animals[,]" 7 U.S.C. § 2143(a)(1), "shall not prohibit any State (or a political subdivision of such State) from promulgating standards in addition to those standards promulgated by the Secretary." Section 2143(a)(8). Section 2145(b) states that "[t]he Secretary is authorized to cooperate with the officials of the various States or political subdivisions thereof in carrying out the purposes of this [Act] and of any State, local, or municipal legislation or ordinance *on the same subject.*" (Emphasis added).

{36} Plaintiffs argue that HEART is in conflict with AWA because HEART allows the City to engage in mandatary spaying and neutering programs while AWA allows for the breeding of minimal numbers of dogs without requiring licensing. However, Plaintiffs fail to explain how these aspects of HEART and AWA are actually in conflict. Plaintiffs do not allege that AWA prohibits states and their political subdivisions from requiring licensing. To the contrary, the provisions of AWA cited above demonstrate that Congress intended for the states and their political subdivisions to continue to leg-islate in this area. Plaintiffs do not cite to any provision of AWA that demonstrates Congress's clear and manifest intent to preempt state and local lawmaking in this area. Accordingly, the district court did not err in dismissing Plaintiffs' federal preemption claim. We now turn to Plaintiffs' state preemption claims.

 {37} There are at least two sources of law governing state preemption of a municipal ordinance in New Mexico: (1) Article X, Section 6 of the New Mexico Constitution and (2) NMSA 1978, § 3–17–1 (1993). Article X, Section 6 of the New Mexico Constitution provides that

> D. A municipality which adopts a charter may exercise all legislative powers and perform all functions not expressly denied by general law or charter.
>
> . . .
>
> E. The purpose of this section is to provide for maximum local self-government. A liberal construction shall be given to the powers of municipalities.

N.M. Const., art. X, § 6(D), (E). Section 3–17–1 states that "[t]he governing body of a municipality may adopt ordinances or resolutions not inconsistent with the laws of New Mexico." The test for determining whether an ordinance is inconsistent with the laws of New Mexico is "whether the ordinance permits an act the general law prohibits, or vice versa." *New Mexicans for Free Enter. v. City of Santa Fe*, 2006–NMCA–007, ¶ 39, 138 N.M. 785, 126 P.3d 1149 (internal quotation marks and citation omitted). "If an ordinance merely complements a statute, instead of being 'antagonistic' to it, it is not in conflict with state law." *Id.* Moreover, "[w]here an ordinance is more strict than a state law, it is effective unless it conflicts with state law." *Id.*

 {38} Plaintiffs first challenge HEART as being inconsistent with the Livestock Code. Plaintiffs claim that HEART is premised on the belief that animals are more than mere chattel property, while the Livestock Code expressly states that "dogs, cats and domesticated fowls and birds shall be deemed and considered as personal property, and all remedies given for the recovery of

personal property and of damages for injuries thereto are hereby extended to them." NMSA 1978, § 77–1–1. As support for their position, Plaintiffs cite subsections B and J of Section 9–2–1–2 of HEART, which recites the City Council's findings in connection with its passage of the ordinance.

{39} Subsection B states that "the people of Albuquerque should treat animals as more than just lifeless[,] inanimate chattel property and ... the relationship between human beings and animals is a special relationship that improves people's lives and reflects basic humanitarian beliefs." Subsection J states, in relevant part, that "some jurisdictions have abandoned the common law rule of categorizing animals as chattel property, subject to the complete discretion of the owner. These progressive jurisdictions have expanded the role of government to include protecting animals from unfettered[,] callous acts that cause pain or suffering."

{40} Plaintiffs claim HEART conflicts with several other provisions of the Livestock Code, as well, including: (1) Sections 77–1–3 and –5 (regarding vaccination of dogs and cats); (2) Section 77–1–6 (regarding confinement and disposition of rabies-infected animals); (3) Section 77–1–10 (making it unlawful to keep vicious or rabid animals); (4) Section 77–1–15.1 (regarding, among other things, municipal licensure of dogs and impoundment of rabies-suspect animals); (5) Section 77–1–17 (regarding abandoned dogs and cats); and (6) Section 77–1–20 (regarding sterilization of adopted animals). Plaintiffs further assert that the legislature expressly delegated some tasks to local government in the Livestock Code and that any tasks not delegated are preempted.

{41} We are not persuaded. At most, Plaintiffs have alleged that the City's findings regarding chattel property are partially wrong and that some overlap exists between the Livestock Code and HEART. However, the test for preemption is not whether the municipality misstates the law in its findings or whether some overlap exists between an ordinance and a statute. The test is "whether the ordinance permits an act the [statute] prohibits, or vice versa." *New Mexicans for Free Enter.*, 2006–NMCA–007, ¶ 39 (internal quotation marks omitted). Plaintiffs have failed to allege what conduct the Livestock Code prohibits that HEART allows, or vice versa.

{42} Moreover, while the legislature may choose to delegate specific tasks to local governments, we will not interpret the legislature's silence regarding other, related activities as an intent to preempt local government action in that area. If express delegation were the test, "municipalities would effectively lose much of their ability to regulate," *id.* ¶ 41, which would run counter to the constitutional policy of providing "maximum local self-government." N.M. Const., art. X, § 6(E). In sum, "an ordinance will conflict with state law when state law specifically allows certain activities or is of such a character that local prohibitions on those activities would be inconsistent with or antagonistic to that state law or policy." *New Mexicans for Free Enter.*, 2006–NMCA–007, ¶ 43.

{43} Plaintiffs' remaining state law preemption claims fail for the same reasons. Plaintiffs assert that HEART is in conflict with several statutes, yet Plaintiffs fail to allege what conduct is permitted by the statutes and forbidden by HEART, or vice versa. We therefore conclude that the district court did not err in dismissing Plaintiffs' state preemption claims.

## F. Veterinarian Client Information

{44} Plaintiffs appear to allege that Section 9–2–6–1(B) of HEART, which sets forth requirements for anti-rabies vaccinations, impermissibly requires veterinarians to divulge information to the City regarding their human clients. The district court does not appear to have addressed this claim in its order, and Plaintiffs have not explained how the issue was preserved below. Moreover, Plaintiffs cite no authority in support of this claim. Accordingly, for the reasons set forth above, we do not address this issue. *In re Adoption of Doe*, 100 N.M. at 765, 676 P.2d at 1330; Rule 12–213(A)(4); Rule 12–216(A).

## G. Effect on Interstate Commerce

{45} Plaintiffs allege that HEART "in effect prohibits and eliminates the flow of business commerce as it relates to the sale of well-bred pets originating from Albuquerque to the rest of the United States." More specifically, Plaintiffs claim that the mandatory spay and neuter provisions of HEART will adversely affect, if not eliminate, Albuquerque breeding operations. Plaintiffs also allege that HEART affects intrastate and interstate travel because many dog shows will not allow spayed or neutered dogs to participate. Finally, Plaintiffs claim that Section 9–2–4–4(E) unconstitutionally infringes on protected speech under the First Amendment because it requires that any advertisement for the sale of an animal include the litter permit number of the animal for sale. We do not address the latter two issues—regarding intrastate and interstate travel and the effect of Section 9–2–4–4(E)—because Plaintiffs again fail to support these claims with arguments and citation to relevant authority. *In re Adoption of Doe*, 100 N.M. at 765, 676 P.2d at 1330; Rule 12–213(A)(4).

{46} The United States Supreme Court has stated the general rule for determining the validity of state or local legislation affecting interstate commerce as follows:

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) (citation omitted).

{47} In the present case, the district court concluded that "reducing the number of unwanted animals that Albuquerque must euthanize is a legitimate local public interest, and any effect on interstate commerce caused by the limitation to four unsterilized animals would be incidental. The burden on commerce is not clearly excessive in relation to this benefit." Plaintiffs do not appear to challenge the legitimacy of the City's interest in reducing the number of animals it has to euthanize. Instead, Plaintiffs attack the district court's conclusion that HEART's burden on interstate commerce is incidental.

{48} Plaintiffs alleged that HEART will substantially affect interstate commerce in their complaint. They specifically alleged that "[as] Albuquerque is home to many kennels and many well-bred pets originate from Albuquerque, shipping pets outside the City would be adversely and significantly affected, if not eliminated, due to the mandatory spay and neuter provisions of [HEART]." Moreover, two individual Plaintiffs submitted affidavits in connection with Plaintiffs' motion for TRO stating that HEART would adversely affect their ability to sell and ship dogs outside the City.

{49} The district court disagreed with Plaintiffs regarding HEART's impact on interstate commerce, although the court did not hear or weigh any evidence in reaching its conclusion. This was error. Taking the allegations in the complaint as true and construing them in the light most favorable to Plaintiffs, we conclude that Plaintiffs sufficiently stated an interstate commerce claim to survive a Rule 1–012(B)(6) motion to dismiss. The district court should have allowed Plaintiffs to proceed with this claim so that they could develop a record and present evidence regarding HEART's impact on interstate commerce. They will have the opportunity to do so on remand.

## H. Freedom of Contract

{50} Plaintiffs claim that HEART impedes freedom of contract because it impermissibly limits the number of animals that can be bred and sold. Plaintiffs argue that this limitation will "eviscerate" breeding programs. However, Plaintiffs neither cite to any provision in HEART that specifically addresses contracts for the sale of animals, nor do they explain how HEART's alleged

adverse effect on the economic viability of breeding programs translates into an infringement on Plaintiffs' freedom of contract. Once again, Plaintiffs cite no authority at all in support of their argument. Accordingly, we do not address this claim. *In re Adoption of Doe,* 100 N.M. at 765, 676 P.2d at 1330; Rule 12–213(A)(4).

## I. Strict Liability

 {51} Finally, Plaintiffs argue that Section 9–2–3–7(H)(5) of HEART subjects the seller of a puppy or kitten that becomes sick to strict liability for medical costs, which is an inappropriate application of the doctrine of strict products liability. This claim is not set forth in Plaintiffs' complaint, the district court did not address the claim in its order, and Plaintiffs again fail to explain how this argument was preserved below.

 {52} Moreover, Plaintiffs do not allege that Section 9–2–3–7(H)(5) violates any constitutional provision. It is not the place of the courts to question the wisdom, policy, or justness of legislation unless the legislation is constitutionally flawed. *State v. Druktenis,* 2004–NMCA–032, ¶ 105, 135 N.M. 223, 86 P.3d 1050. "It is but a decent respect due to the wisdom [and] the integrity ... of the legislative body by which any law is passed, to presume in favor of its validity, until its violation of the Constitution is proved beyond all reasonable doubt." *Id.* (internal quotation marks and citation omitted).

{53} Plaintiffs have failed to set forth whether and how Section 9–2–3–7(H)(5) is unconstitutional. We therefore have no grounds upon which we can conclude that Section 9–2–3–7(H)(5) is invalid. Accordingly, we find no reason to disturb the district court's order with respect to this issue.

## J. Rules of Appellate Procedure

{54} The reader will note that we have dealt with several of Plaintiffs' claims summarily for failure to follow the Rules of Appellate Procedure. In most cases, Plaintiffs either failed to demonstrate that an issue was preserved for review, or failed to support their claims with argument and authori-

ty as required by Rule 12–213(A)(4). It may be that Plaintiffs, due to the high volume of issues presented on appeal and the page limitations set forth in Rule 12–213(F)(2), made the tactical decision to dedicate less time and effort to certain issues in their briefs. The unfortunate effect of such a tactic, however, is that it leaves the reviewing court with little—if anything—upon which it can grant relief with respect to those issues.

 {55} The Rules of Appellate Procedure exist to ensure the efficient and fair administration of justice. Although "an important policy ... is to construe the Rules of Appellate Procedure liberally so that appeals may be determined on their merits," *Capco Acquisub, Inc. v. Greka Energy Corp.,* 2007–NMCA–011, ¶ 16, 140 N.M. 920, 149 P.3d 1017, we will not implement that policy to the point of making the Rules meaningless. There is currently no rule limiting the number of issues a party can present on appeal. However, in light of the rules regarding page limits and the requirements for briefing, we encourage litigants to consider carefully whether the number of issues they intend to appeal will negatively impact the efficacy with which each of those issues can be presented.

## CONCLUSION

{56} The district court's order dismissing Plaintiffs' complaint is reversed with respect to Plaintiffs' excise tax and interstate commerce claims. The district court's order is affirmed in all other respects. The case is hereby remanded for proceedings consistent with this opinion.

{57} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and RODERICK T. KENNEDY, Judges.