This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37958

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DONALD MOTE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James W. Counts, District Judge**

Hector H. Balderas, Attorney General
Anne E. Minard, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**     Defendant Donald Mote appeals his convictions of aggravated battery against a household member, pursuant to NMSA 1978, Section 30-3-16(C) (2008, amended 2018), and false imprisonment, pursuant to NMSA 1978, Section 30-4-03 (1963). Defendant raises a number of issues on appeal. For the reasons that follow, we affirm.

## BACKGROUND

**{2}**     In April 2016, Victim moved into a new trailer with her two children, K.C., eight years old, and P.S., six years old. At the time, Victim was in a romantic relationship with Defendant. Defendant first visited the trailer the afternoon of April 11, 2016, and became upset because Victim leased the space without telling him.

**{3}**     That evening, Defendant returned to the trailer and he and Victim continued to argue about Victim's lease. Defendant was upset because he thought Victim's male friend was named on the lease. The fighting escalated as Defendant yelled at Victim, demanding to see her phone, and she refused. Victim asked Defendant to leave and he refused. The argument included yelling, slamming doors, physical contact, and Victim yelling that she wished to be let out of the home. During the argument, Defendant threatened to kill Victim's two children if she did not show him the lease. Later, he told the children he was going to kill their mother. At one point, Defendant grabbed a kitchen steak knife, went into a bedroom, and told Victim he was going to kill himself. Victim grabbed at the knife trying to get it away from him and cut her finger.

**{4}**     The argument culminated in the living room where Defendant shoved Victim against the wall, dragged her by her arms, got on top of her, and put his hands around her neck. She tried to scream while his hands were around her neck, but he slammed his hand down on her face. He was wearing a ring, and the ring chipped her tooth. During this time, K.C. heard thumps from his bedroom, went into the living room, and from the hallway witnessed Defendant on top of Victim. Victim could not breathe, became dizzy, and eventually was able to loosen Defendant's grip on her neck and tell him she would show him the lease. Once she did, Defendant saw that Victim's name was the only one on the lease.

**{5}**     Defendant left the trailer early the next morning, and Victim went to the hospital where she worked. There, she told her boss what happened. Victim's boss took her to the hospital's emergency room to have her injuries assessed and someone called the police. Two days later, K.C. was interviewed by a Safehouse forensic interviewer about the incident.

**{6}**     Defendant was charged with aggravated battery against a household member, contrary to Section 30-3-16(C), false imprisonment contrary to Section 30-4-03, and criminal damage to the property of a household member contrary to NMSA 1978, Section 30-3-18 (2009). At trial, Victim testified, K.C. testified, both an investigating officer and an investigating detective testified, as did the person who performed K.C.'s Safehouse interview. The jury found Defendant guilty of aggravated battery against a household member and false imprisonment but he was acquitted of the charge of criminal damage to the property of a household member.

**DISCUSSION**

**{7}**     On appeal, Defendant raises three claims of error regarding admission of evidence: he argues[1] that the district court erred by admitting video evidence of K.C.'s Safehouse interview because it was inadmissible under Rule 11-801(D)(1)(b) NMRA, hearsay, and prejudicial; a statement Defendant made during a break at trial because it was irrelevant and prejudicial; and text messages from Defendant because they lacked sufficient authentication. Defendant also argues the State committed prosecutorial misconduct by (1) referring to instances of violence outside of the record, (2) suggesting that the State and its law enforcement witnesses were impermissibly certain of Defendant's guilt based on their expertise in handling domestic violence cases, (3) attacking defense counsel's veracity in closing argument, (4) accusing defense counsel of harming victims of domestic violence, (5) inviting the jurors to stand up for domestic violence victims, (6) inviting the jury to put themselves in K.C.'s shoes, (7) urging the jury to rely on evidence admitted for a limited purpose as substantive proof of guilt, and (8) the combined impact of prosecutorial misconduct rises to the level of fundamental error. Defendant's final argument is that at sentencing, the State erred in arguing, and the district court erred in considering, evidence relating to charges in another case of which Defendant was acquitted. Finding no error, we affirm.

## I.     The District Court Did Not Abuse Its Discretion in Admitting Certain Evidence

**{8}**     We begin our analysis by addressing Defendant's claims of error relating to admission of evidence. "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). We will find an abuse of discretion when the "[district] court's decision was obviously erroneous, arbitrary or unwarranted." *State v. Trujillo*, 2002-NMSC-005, ¶ 15, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted). Generally, the district court has discretion on these issues and we defer to its judgement. *See State v. White*, 1997-NMCA-059, ¶ 9, 123 N.M. 510, 943 P.2d 544 (noting that generally "we defer to such rulings by the district court under the abuse-of-discretion standard"); *State v. McGhee*, 1985-NMSC-047, ¶ 24, 103 N.M. 100, 703 P.2d 877 ("The admission of evidence is within the [district] court's discretion and will not be disturbed absent a clear abuse of discretion.").

---

[1]At the outset, we remind Defendant that litigants are encouraged to limit the number of issues they choose to raise on appeal in order to ensure that those presented are adequately argued and are supported both by authority and properly cited facts in the record. *See Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶¶ 54-55, 144 N.M. 636, 190 P.3d 1131 ("[W]e encourage litigants to consider carefully whether the number of issues they intend to appeal will negatively impact the efficacy with which each of those issues can be presented.").

## A. The District Court Did Not Err in Admitting K.C.'s Safehouse Interview

**{9}** Defendant argues that the district court erred in admitting K.C.'s Safehouse interview because it is inadmissible under Rule 11-801(D), hearsay, and prejudicial. Defendant frames his argument around his theory of the case, namely that K.C.'s story was tainted from the beginning because Victim provided information to K.C. and her information was not credible. Based on this, he argues, K.C.'s Safehouse interview was compromised from the start and does not meet Rule 11-801(D)(1)(b)'s requirement that the motivation to lie occurred after the consistent statement was made.

**{10}** At trial, K.C. testified regarding his recollection of the events at issue. During cross-examination, counsel for Defendant asked questions that implied that Victim could have influenced K.C.'s trial testimony when he and his mother discussed the incident the previous day. As a result of that implication, the State was allowed to introduce K.C.'s Safehouse interview as a prior consistent statement under Rule 11-801(D)(1)(b). Rule 11-801(D)(1)(b) excludes certain prior consistent statements from the definition of hearsay if "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying[.]" "A prior consistent statement is admissible to counter a charge of recent fabrication, improper influence, or motive." *State v. Barr*, 2009-NMSC-024, ¶ 30, 146 N.M. 301, 210 P.3d 198. The statement at issue "must have been made before the alleged motive to fabricate occurred." *State v. Nichols*, 2006-NMCA-017, ¶ 20, 139 N.M. 72, 128 P.3d 500. Further, the statement "must be consistent with testimony made by the declarant at trial." *State v. Sandate*, 1994-NMCA-138, ¶ 18, 119 N.M. 235, 889 P.2d 843.

**{11}** Based on the questions asked by defense counsel regarding K.C.'s conversations with his mother the previous day, it was reasonable for the district court to find that defense counsel implied K.C.'s conversation with his mother could have influenced his trial testimony. Once defense counsel raised that inference, it was within the district court's discretion to grant the State's request to admit the Safehouse interview as K.C.'s prior consistent statement under Rule 11-801(D)(1)(b). *See State v. Casaus*, 1996-NMCA-031, ¶ 18, 121 N.M. 481, 913 P.2d 669 (concluding that statements made before a charge of recent fabrication or improper influence or motive are admissible under Rule 11-801(D)(1)(b)). Although Defendant argues on appeal that his real objection to the district court's ruling is that the Safehouse interview was somehow compromised from its inception by Victim's motive to lie, Defendant did not raise this argument in district court and we decline to address this particular argument further. *See State v. Leyva*, 2011-NMSC-009, ¶ 36, 149 N.M. 435, 250 P.3d 861 ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]" (internal quotation marks omitted)).

**{12}** Defendant next argues that the Safehouse interview was more prejudicial than probative under Rule 11-403 NMRA. Defendant claims that because K.C. set forth the same statements in his trial testimony, the Safehouse interview served only to

prejudicially bolster both K.C.'s and Victim's testimony. He also argues that it was prejudicial because it "included in the redacted interview irrelevant character evidence in the form of K.C. saying that he did not feel safe around [Defendant] because [Defendant] was dangerous and scary." Again, Defendant fails to direct this Court to where he preserved these arguments. And our own review of the record failed to find evidence that Defendant raised these arguments in district court. Thus, we decline to address them. *See* Rule 12-321(A) NMRA ("To preserve an issue for review it must appear that a ruling or decision by the [district] court was fairly invoked[.]"; *Leyva*, 2011-NMSC-009, ¶ 36 (same).

**{13}**    Concluding there to be no basis for a determination that the district court erred in admitting the Safehouse interview under Rule 11-801(D)(1)(b)), we affirm this ruling.

## B.      The District Court Did Not Abuse Its Discretion in Admitting Defendant's Hallway Statement

**{14}**    The officer who investigated the case was in the hallway waiting to testify when she overheard Defendant tell an acquaintance that Victim "deserved what she got" and that "she couldn't even look him in the eyes." The prosecutor informed the district court that he intended to ask the officer about Defendant's hallway statement and when the State began to question the officer about it, Defendant objected to the statement's admission. The judge overruled the objection and admitted Defendant's statement as an admission under Rule 11-801(D)(2)(a).

**{15}**    On appeal, Defendant contends that the statement was ambiguous and could have been interpreted in a variety of ways, and given the limited relevance of his statement because of its ambiguity, the probative value of the statement was substantially outweighed by its prejudicial effect.

**{16}**    Otherwise admissible evidence may be excluded if the probative value is substantially outweighed by a danger of unfair prejudice. Rule 11-403. "Because a determination of unfair prejudice is fact sensitive, much leeway is given [to] trial judges who must fairly weigh probative value against probable dangers." *State v. Otto*, 2007-NMSC-012, ¶ 14, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citation omitted). "Determining whether the prejudicial impact of evidence outweighs its probative value is left to the discretion of the [district] court." *Rojo*, 1999-NMSC-001, ¶ 48, (alteration, internal quotation marks, and citation omitted). We find no abuse of discretion in the district court's admission of Defendant's statement under the circumstances. Defendant's statement, "She deserved what she got," in the midst of a trial in which it was alleged that Defendant had strangled Victim and chipped her tooth could reasonably be construed as an admission that the event Victim described did occur. Although such an admission might be prejudicial to Defendant's defense, it cannot be said that it would be unfairly prejudicial under the circumstances. *See State v. Watley*, 1989-NMCA-112, 109 N.M. 619, 788 P.2d 375, ¶ 23 ("The fact that evidence prejudices defendant is not grounds for its exclusion."); *State v. Salgado*, 1991-NMCA-

111, ¶ 11, 112 NM. 793, 819 P.2d 1351 (stating that "[t]o exclude evidence because of its prejudicial effect, the effect must substantially outweigh its probative value").

{17}    On appeal, Defendant further argues that character evidence is traditionally prohibited under Rule 11-404(B)(2) NMRA because it is prejudicial, and that because his statement was likely to be misconstrued as evidence of his character, it should have been excluded as being significantly more prejudicial than probative. Defendant does not refer us to where this argument is preserved, and our own review of the records finds no evidence that this argument was raised in district court. Although we may review an unpreserved evidentiary ruling for plain error, Defendant has not requested that we do so, nor has he developed any argument based on plain error to persuade us that admitting his statement affected his substantial rights. *See State v. Garcia*, 2019-NMCA-056, ¶ 10, 450 P.3 418 ("We review for plain error in cases raising evidentiary matters in which the asserted error affected substantial rights, though they were not brought to the attention of the [district court]."); *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 ("To find plain error, the Court must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." (internal quotation marks and citation omitted)).

{18}    We decline to develop this argument for Defendant. *See State v. Stevenson*, 2020-NMCA-005, ¶ 20, 455 P.3d 890, *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-38015, Dec. 26, 2019) (noting that it is not the responsibility of the appellate court to address an undeveloped argument or perform research for a party). Based on the foregoing, we conclude that the district court did not abuse its discretion with regard to the admission of Defendant's hallway statement.

## C.    The District Court Did Not Abuse Its Discretion by Admitting Text Messages

{19}    Defendant next argues that the district court erred by admitting an exhibit that consisted of photographs of text messages received by Victim from a contact named "Zack," which Victim identified as from Defendant. Defendant objected to the admission of the exhibit on authentication grounds.

{20}    "[R]ecords must be authenticated" unless "they fall within the narrow exception for self-authenticating documents[.]" *State v. Ramirez*, 1976-NMCA-101, ¶ 46, 89 N.M. 635, 556 P.2d 43, *overruled on other grounds by Sells v. State*, 1982-NMSC-125, ¶ 9, 98 N.M. 786, 653 P.2d 162. Authentication may be established through circumstantial evidence. *State v. Imperial*, 2017-NMCA-040, ¶ 32, 392 P.3d 658. To satisfy authentication requirements "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 11-901(A) NMRA. When "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances[,]" support such a finding, the evidence satisfies the authentication requirement. Rule 11-901(B)(4).

**{21}**     Victim identified the text messages in the exhibit as messages from Defendant. Victim's identification was supported by one of the messages in which Defendant identified himself and added that he was using his friend Zack's phone Victim testified as well that she recognized Defendant's communication style. The text messages sent from April 11, 2016 to April 12, 2016, discussed the incidents that formed the basis for the charges at trial, and included several apologies.

**{22}**     Also supporting an inference that Defendant sent the text messages at issue was the district court's admission of two voicemails from Defendant to Victim from April 7 and April 8. Victim identified Defendant as the speaker in the messages and Defendant specifically identified himself in one of the messages. *See State v. Jackson*, 2018-NMCA-066, ¶ 16, 429 P.3d 674 (citing Rule 11-901(B)(5) acknowledging "that opinion evidence identifying a person's voice through electronic transmission, in a manner that connects it with the alleged speaker satisfies the Rule's authentication requirement"). These voicemails were received from the same phone number from which the text messages in question originated. Although the saved contact name itself suggested a sender other than Defendant, the "contents, substance, internal patterns, . . . [and] circumstances" described in Victim's testimony were sufficient to satisfy the authentication requirements of Rule 11-901(B)(4). *See Jackson*, 2018-NMCA-066, ¶ 13 ("There is no abuse of discretion when the evidence is shown by a preponderance of the evidence to be what it purports to be." (alteration, internal quotation marks, and citation omitted)).

**{23}**     Defendant concedes that the bar for authentication of this category of evidence is low, but argues that because of the "ease with which [text messages] can be fabricated[,]" there should be additional evidence, beyond the testimony of Victim and the contents of the messages, to verify that Defendant actually sent the messages. Defendant fails to suggest what additional evidence should be required to adequately authenticate the messages, provides no substantive analysis for his argument, and instead cites, without further analysis, out of state authority and a newspaper article. We need not consider this argument further. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts are under no obligation to review unclear or undeveloped arguments). We determine that Victim's testimony combined with the admission of the voicemails that demonstrated Defendant's use of Zack's phone to contact Victim previously was sufficient to authenticate the text messages. We conclude the district court did not abuse its discretion in admitting the text messages exhibit.

## II.     The Prosecutor Did Not Commit Prosecutorial Misconduct Sufficient to Require a New Trial

**{24}**     Defendant contends that there were a number of instances of prosecutorial misconduct in the trial, most of which he argues occurred during the prosecution's closing arguments. Defendant concedes that the instances he identifies were not properly preserved, but asks this Court to review each instance for fundamental error and review the cumulative effect of these statements for fundamental error as well. We review Defendant's allegations of prosecutorial misconduct both individually and for

their cumulative effect. As we explain below, we conclude that no instances of prosecutorial misconduct occurred, and thus, we also conclude that there was no fundamental error.

**{25}** "We review comments made in closing argument in the context in which they occurred so that we gain a full understanding of the comments and their potential effect on the jury." *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254 (internal quotation marks and citation omitted). Both the prosecution and defense are permitted wide latitude during closing, and "the [district] court has wide discretion in dealing with and controlling closing argument[.]" *Id.* (internal quotation marks and citation omitted). "A prosecutor's remarks must, however, be based on the evidence or made in response to the defendant's arguments." *State v. Sena*, 2018-NMCA-037, ¶ 13, 419 P.3d 1240, *aff'd in part, rev'd in part*, 2020-NMSC-011. We review a district court's ruling on a timely preserved objection for prosecutorial misconduct for abuse of discretion "because the [district] court is in the best position to evaluate the significance of any alleged prosecutorial errors[.]" *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citations omitted).

**{26}** Where, as here, the objections have not been preserved, we review for fundamental error. "To find fundamental error, we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348 (internal quotation marks and citation omitted). "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Carrillo*, 2017-NMSC-023, ¶ 50, 399 P.3d 367 (internal quotation marks and citation omitted). In this context, "only in [the *most exceptional*] circumstances should we reverse the verdict of a jury and judgment of a [district] court." *Sosa*, 2009-NMSC-056, ¶ 25 (emphasis added).

## A. The Prosecution Did Not Improperly Reference Instances of Violence Outside the Record

**{27}** Two days after the incident at issue in this trial, Victim claimed Defendant went to her friend's house, pointed a gun at Victim and two others through a window, and threatened them. Defendant was charged with bribery, intimidation of a witness, and aggravated assault, and subsequently was acquitted at a different trial. Before trial for the incident at issue in this case, the parties agreed, based on the State's motion, not to mention the incident.

**{28}** In the State's opening statement, the prosecutor told the jury "You will hear this relationship was paranoid, controlling, abusive both physically and mentally, and then finally physically violent." Defendant did not object to this statement. In the State's closing argument, the prosecutor referred back to his opening argument and stated, "As we talked about yesterday, . . . back in 2016, [Victim] found herself trapped in a violent, abusive, controlling relationship. So violent that back on the eleventh into the early

morning hours of the twelfth, she found herself on her living room floor being strangled by . . . Defendant." The prosecutor later told the jury, "You heard testimony from [Victim] that this relationship for a couple years was up and down[.] You heard that. You heard fits of anger, apologies . . . and violence." Once the jury was sent to deliberate, Defendant moved for a mistrial based on the prosecutor's closing statement, arguing that the prosecutor referred to something outside of the scope of the trial and that it was more prejudicial than probative.

**{29}** Defendant claims that these three statements violated the district court's ruling to not reference Defendant's other charges and acquittal. Although the logic of Defendant's argument is difficult to follow, we understand Defendant to argue that it was misleading to refer to the relationship as violent because of Defendant's acquittal and doing so improperly referred to information outside the record.

**{30}** We fail to understand Defendant's argument given the content of the prosecutor's statements. Based on our review of the citations to the record provided by Defendant and our own review of the prosecutor's opening and closing remarks, contrary to Defendant's contention, the prosecutor never mentioned the incident that led to Defendant's subsequent charges and acquittal. The prosecutor's statements were directed to the evidence at trial, including Victim's description of the violent events that transpired at her trailer. The prosecutor's remarks were reasonable based on the evidence and we determine that there was no prosecutorial misconduct in these statements. *See State v. Taylor*, 1986-NMCA-011, ¶ 25, 104 N.M. 88, 717 P.2d 64 ("[T]he prosecutor's remarks must be based on the evidence, or be properly in response to the defendant's argument." (citations omitted)).

**B. The Prosecutor Did Not Elicit Testimony From Law Enforcement Officers Suggesting They Determined Defendant's Guilt**

**{31}** Defendant argues the prosecutor elicited testimony from law enforcement witnesses that they only prosecuted cases they could corroborate and they found Victim's injuries consistent with her allegations. Defendant also argues that the prosecutor elicited testimony from law enforcement witnesses that "suggested to the jury that the investigating officers . . . had reviewed the evidence . . . and found [Defendant] guilty[,] so the jury should trust their expertise and do so as well." Defendant does not direct us to where in the record this suggestive testimony occurred, nor does Defendant note where he objected to this line of questioning. *See* Rule 12-318(A)(4) NMRA (requiring briefs to have an "argument which, with respect to each issue presented, shall contain . . . citations to . . . record proper, transcript of proceedings, or exhibits relied on"); *Leyva*, 2011-NMSC-009, ¶ 36 ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]" (internal quotation marks and citation omitted)); *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record." (internal quotation marks and citation omitted)). Nonetheless, we reviewed the record for any law enforcement

testimony that might support Defendant's contention and found no such statements. We will not consider Defendant's arguments on this issue further.

## C. The Prosecutor Did Not Improperly Invoke His Own Opinion of Defendant's Guilt

**{32}** In rebuttal to Defendant's closing argument, the prosecutor said that domestic violence cases are traditionally a "comparison of credibility" between victims and defendants. The prosecutor stated that this incident had corroboration, and summarized evidence that corroborated Victim's version of events.

**{33}** Defendant contends that these statements rise to the level of prosecutorial misconduct because they improperly invoked the prosecutor's own opinion of Defendant's guilt and improperly referred to evidence outside the record by stating that domestic violence cases typically lack corroboration.

**{34}** We see no impropriety in the prosecutor's remarks. We note that this comment arose during closing where both the prosecution and defense are "permitted wide latitude." *Smith*, 2001-NMSC-004, ¶ 38. The prosecutor stated a general proposition in response to Defendant's closing argument discrediting Victim, suggesting that domestic violence cases are often determined by assessing credibility and then highlighted evidence that corroborated Victim's testimony. Listing corroborating factors did not improperly indicate the prosecution's opinion of Defendant's guilt; instead, the prosecutor went through the corroborating evidence as part of the argument that Defendant was guilty based on the evidence presented. We determine that these statements are not evidence of prosecutorial misconduct.

## D. The Prosecutor Did Not Improperly Question Defense Counsel's Veracity

**{35}** Defendant argues that on two occasions during closing argument, the prosecutor unnecessarily and improperly disparaged defense counsel's honesty. The first instance alleged by Defendant arose in the context of describing Victim's testimony regarding her chipped tooth. Victim testified that while Defendant was strangling her, she tried to talk, but when she did, he slammed his open hand down on her mouth and broke her tooth with his ring. During closing, defense counsel implied that Victim lied about how her tooth was chipped by telling the police that the chipped tooth was a result of Defendant punching her in the mouth. Defense counsel pointed out that the photographs did not show injuries to her lips, and argued it was impossible for Defendant to chip her tooth without leaving other damage. In rebuttal, the prosecutor asserted that defense counsel misrepresented Victim's description of what happened: "They say there is no evidence of a punch, that's funny because no one talked about a punch. There was no punch and so is . . . Defendant misrepresenting what the evidence is or the testimony? The evidence is that it was open hand and his ring chipped her tooth."

**{36}** It was not unreasonable for the prosecutor to respond to defense counsel's misrepresentation of evidence presented by pointing out that misrepresentation. And

the prosecutor's statement regarding Victim's testimony on this issue is supported by the record. Further, the prosecutor's allegation that defense counsel misrepresented the testimony does not rise to the level of calling defense counsel a liar, contrary to Defendant's contention. *See State v. Torres*, 2012-NMSC-016, ¶ 3, 279 P.3d 740 (noting that the prosecution's statement to the jury that opposing counsel lied "undercuts public confidence in the legal profession, and unnecessarily raises the risk of a mistrial"). Given that the prosecutor's remarks were in response to defense counsel's argument, we see nothing in the prosecutor's statement that rises to the level of prosecutorial misconduct. *See Sosa*, 2009-NMSC-056, ¶ 39 (noting that after defense counsel claimed that there was no evidence supporting the state's theory, "the prosecutor was almost compelled to respond. Having opened the door, [the d]efendant cannot now split semantic hairs over the prosecutor's choice of words").

**{37}** The second statement with which Defendant takes issue arose in response to defense counsel questioning Victim's credibility regarding her testimony about cutting her finger when she tried to grab the knife from Defendant. In closing, defense counsel referred to the knife incident as representing "a form of exaggeration, a form of histrionics that [Victim] expressed to the police[.]" He then questioned Victim's credibility based on what he described as her bias and exaggeration. In rebuttal, the prosecutor pointed out that Victim did not testify that Defendant cut her with a knife: "[Victim] never said that . . . Defendant did it to her. Again, is . . . Defendant making this stuff up? Trying to say that [Victim] is a liar when she obviously didn't say it on the stand."

**{38}** Reviewing this statement in the context of closing argument, we determine that there was no prosecutorial misconduct. The prosecutor's statement was in response to defense counsel's characterizations and allegations about Victim that were not supported by the evidence. *See State v. Cordova*, 1983-NMCA-144, ¶ 18, 100 N.M. 643, 674 P.2d 533 (noting that an improper statement by the prosecutor was invited by defense counsel). Moreover, the comment regarding whether Defendant was "again . . . making this stuff up" arose after defense counsel misrepresented Victim's testimony earlier in his closing argument. Pointing out misrepresentations by opposing counsel is not to the same as labeling counsel a liar. We conclude that this statement, just like the one previously discussed, does not rise to the level of prosecutorial conduct.

### E.    The Prosecutor Did Not Commit Prosecutorial Misconduct Based on Closing Remarks Regarding Future Victims

**{39}** Defendant contends that the prosecutor committed prosecutorial misconduct by improperly suggesting that the jury could vindicate the rights of future domestic violence victims with a conviction in this case and that defense counsel's actions could deter future victims from testifying.

**{40}** Defendant's theory of the case was that Victim was angry with Defendant for cheating on her and fabricated her claim that Defendant strangled her. Therefore, defense counsel argued, what K.C. described in his testimony may have been two people engaging in consensual sex. In rebuttal, the prosecutor methodically went

through the evidence, highlighting witness testimony and other evidence that corroborated Victim's account and concluded by saying:

> One might consider in your deliberations back there, did we see something to explain perhaps why victims don't want to call the police? Why do victims [not] want to go in court and testify as to what happened to them? When you have to talk about "when was the last time you had sex with . . . Defendant?" . . . Is it any wonder that women, traditionally women but perhaps men, don't come forward and want to testify before twelve or fourteen people. Is it any wonder?

**{41}** Relying on *State v. Diaz*,1983-NMCA-091, ¶ 18, 100 N.M. 210, 668 P.2d 326, and *State v. Cooper*, 2000-NMCA-041, ¶ 14, 129 N.M. 172, 3 P.3d 149, Defendant argues that the prosecution's statements improperly suggested that the jury should stand up to defense counsel's improper methods by sending a message. In *Diaz*, the prosecutor told the jury that a not guilty verdict "would send a message to the community that would encourage similar crimes" and we determined that such a comment was improper because it in effect suggested to the jury to disregard evidence of a defense even if it was meritorious. 1983-NMCA-091, ¶ 18. In *Cooper*, the prosecutor first told the jury, "[T]hink of one other thing by your verdict today, you can send a message if you convict this . . ." and after an objection continued by stating, "We have to do whatever we can to keep [police officers] safe and out of harm's way[.]" 2000-NMCA-041, ¶ 14. Although we did not reach the defendant's claim of error based on these statements, we noted that "[p]rosecutorial commentary that urges a jury to convict for reasons other than the evidence defies the law and undermines the integrity of a verdict." *Id*. ¶ 15. We noted it is the prosecutor's "duty to refrain from improper methods calculated to produce a wrongful conviction[.]" *Id*. ¶ 15.

**{42}** We disagree with Defendant that the prosecution's statements at issue here are similar to those described in *Diaz* and *Cooper*. Based on the context, we fail to see any impropriety in the prosecution's statements. The prosecutor's remarks were in response to defense counsel's attack on Victim's credibility. *See State v. Wesson*, 1972-NMCA-013, ¶ 9, 83 N.M. 480, 493 P.2d 965 (concluding that the prosecutor's statement was not in error because the district court determined "that the defendant opened the door for the [prosecutor's] comment"). Here, the prosecutor's statements did not suggest that the jury should send a message with its verdict nor was it suggested that the jury should reach its verdict for reasons unsupported by the evidence. We conclude that these statements do not rise to the level of prosecutorial misconduct.

**F.      The Prosecutor's Statements Did Not Invite the Jury to Put Themselves in K.C.'s Shoes**

**{43}** Relying on *Allen*, Defendant argues that the prosecution improperly invited the jurors to put aside their objectivity and base their verdict on what K.C. must have experienced. *See* 2000-NMSC-002, ¶ 110 (holding statements in closing arguments were improper insomuch as they attempted to "persuade the jury to reach a verdict

based on biases or prejudices"). Based on our review of the record, we conclude that the prosecution's remarks did not invite the jury to reach a verdict based on sympathy for K.C.

**{44}** Defendant attacked K.C.'s credibility in closing by arguing that Victim "told a story" and it was repeated by each witness, including K.C. Defendant insinuated K.C. misconstrued what he saw as a fight when it really was consensual sex. He went on to point out that in K.C.'s Safehouse interview that he told the forensic interviewer what happened without being asked and insinuated that K.C. was telling a story that his mother told him to tell. Defendant argued that K.C.'s story had inconsistencies and that his story became "larger" and "enhanced" over time.

**{45}** In response to Defendant's argument, the prosecutor asked the jury to assess K.C.'s credibility based on his testimony at trial and on the consistent nature of the Safehouse interview from two years earlier. The prosecutor said to the jury, "Luckily, you folks get to see not only [K.C.] as an eight year old, but you see [K.C.] nearly two and a half years ago when he was Safehoused on April 14, 2016. You get to determine, is he an intelligent young man, even two and half years ago. Does he know why he's there?" And in response to that rhetorical question, said,

> [H]ere's a revelation—you see your mom almost being killed by [Defendant], a person that you describe to be dangerous, and you see all of this in your brand new home that you moved in that one day. Your little brother is with you and . . . Defendant describes blowing someone's brains out . . . and threatens the little kids' life and your mom says, 'You know what, to get to my boys, you've got [to] go through me' so that's the context of it.

**{46}** We see no impropriety in the prosecution's argument. First, these comments were in response to Defendant's attack on K.C.'s credibility and seem reasonably to be within the bounds of closing argument. *See Smith*, 2001-NMSC-004, ¶ 38 ("During closing argument, both the prosecution and defense are permitted wide latitude[.]"). More importantly, contrary to Defendant's gloss on this statement, the prosecution did not ask the jurors to put themselves in K.C.'s shoes in order to sympathize with him so that they would reach a certain verdict. *See State v. Stevens*, 1972-NMCA-010, ¶ 6, 83 N.M. 475, 493 P.2d 960 ("Testimony must be read in context. Words, phrases or sentences may not be selected out of context."). Instead, the prosecution described the incident from K.C.'s point of view, highlighting salient facts that would have made what he witnessed memorable, even though K.C. was two and a half years younger at the time. As such, we perceive no impropriety in the prosecution's statements regarding K.C.'s testimony.

**G. The Prosecutor Did Not Urge the Jury to Rely on the Safehouse Interview for an Improper Purpose**

**{47}** After Defendant questioned K.C.'s testimony in closing, in rebuttal, the prosecutor referred to K.C.'s testimony again and asked the jury to evaluate his credibility based on the consistency between his Safehouse interview and his trial testimony.

**{48}** Defendant argues that it was prosecutorial misconduct for the State to refer to the Safehouse interview as substantive proof when it was admitted as a prior consistent statement. Even if we agree that the prosecutor did ask the jury to rely on the Safehouse interview as substantive proof, it would not have been error to do so. A prior consistent statement is considered nonhearsay. *Casaus*, 1996-NMCA-031, ¶ 15. Nonhearsay statements are considered so reliable that, if admitted, "the statements can be used as substantive evidence." *Id.* Prior consistent statements, "if made before the improper influence or motive is alleged to have originated, are inherently reliable." *Id.* Properly admitted prior consistent statements may be offered for the truth of the matter asserted. *State v. Lucero*, 1989-NMCA-103, ¶ 16, 109 N.M. 298, 784 P.2d 1041 *overruled on other grounds by Casaus*, 1996-NMCA-031, ¶ 12.

**{49}** Because a prior consistent statement is admissible for the truth of the matter asserted, we find no evidence of prosecutorial misconduct based on the prosecution's references to the Safehouse interview in closing.

## H.     No Fundamental Error Occurred

**{50}** Defendant's final argument is that the cumulative impact of the prosecutor's multiple acts of misconduct compromised the fairness of the trial and rose to the level of fundamental error. Having found no instances of prosecutorial misconduct, we need not examine Defendant's claim that fundamental error arose from the alleged misconduct.

## III.     No Error Occurred During the Sentencing Hearing

**{51}** During the sentencing hearing, the State referenced Defendant's two previous felony convictions and four previous convictions involving domestic violence. The prosecutor also referenced the facts that formed the basis for Defendant's subsequent charges and acquittal. Despite the acquittal, the prosecutor argued that Defendant's defense at trial was rebutted by text messages the State intended to present to the district court at the sentencing hearing.

**{52}** Defendant objected to the introduction of the text messages. The district court noted that the rules of evidence did not apply to the sentencing hearing and stated that it would decide what weight to give the text messages. Ultimately, the district court refused to second-guess the jury's acquittal verdict in the other case by considering the text messages and stated that its sentencing decision would be based on the court's consideration of Defendant's conviction in this case and his substantial criminal history.

**{53}** On appeal, Defendant argues due process required the State to provide the defense with notice of its intent to rely on the text messages that referenced the

subsequent incident between Defendant and Victim. Further, Defendant argues that it was an abuse of discretion for the district court to rely on this evidence, therefore, reversal is necessary, and a new sentencing hearing is required. "We review the [district] court's sentencing for an abuse of discretion." *State v. Jensen*, 1998-NMCA-034, ¶ 19, 124 N.M. 726, 955 P.2d 195.

{54}     Contrary to Defendant's argument, the district court did not rely on the objected-to text messages in its sentencing decision. The district court stated its decision was based on Defendant's conviction in this case and Defendant's criminal history, which includes his convictions and arrests, not the additional evidence the State attempted to introduce at the hearing. We cannot find an abuse of discretion in the imposition of a sentence grounded in the evidence of the case and Defendant's criminal history. *See State v. Gardner*, 2003-NMCA-107, ¶ 43, 134 N.M. 294, 76 P.3d 47 (finding no abuse of discretion at a sentencing hearing when the district court's statement reflected that the sentence resulted from the evidence presented at trial).

{55}     Further, procedural due process requires notice and an opportunity to be heard. *State v. Segura*, 2014-NMCA-037, ¶ 22, 321 P.3d 140 (noting that due process rights require notice and the opportunity to be heard). This includes "that a defendant be given reasonable notice and a fair opportunity to defend." *State v. Gutierrez*, 2015-NMCA-082, ¶ 24, 355 P.3d 93. These elements of procedural due process were present in this case. Defendant was alerted to the prosecution's argument relating to the text messages in the hearing. Defendant was given an opportunity to respond to the text messages by both objecting to their admission and by arguing that the messages' accuracy was in question so they should not be used as a basis of his sentence. As such, we determine that Defendant was not denied due process and is not entitled to a new sentencing hearing.

**CONCLUSION**

{56}     We affirm Defendant's sentence for aggravated battery against a household member and false imprisonment.

{57}    **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**